# Illinois Official Reports

## Appellate Court

---

*Performance Food Group Co. v. ARBA Care Center of Bloomington, LLC*,
**2017 IL App (3d) 160348**

---

| | |
|---|---|
| Appellate Court Caption | PERFORMANCE FOOD GROUP COMPANY, LLC, a Delaware Limited Liability Company, d/b/a Performance Foodservice—Thoms Proestler, Plaintiff-Appellee, v. ARBA CARE CENTER OF BLOOMINGTON, LLC, an Illinois Limited Liability Company; ARBA CARE CENTER OF COLFAX, LLC, an Illinois Limited Liability Company; ARBA CARE CENTER OF ELGIN, LLC, an Illinois Limited Liability Company; ARBA CARE CENTER OF TOLUCA, LLC, an Illinois Limited Liability Company; ASTA CARE CENTER OF FORD COUNTY, LLC, an Illinois Limited Liability Company; ASTA CARE CENTER OF PONTIAC, LLC, an Illinois Limited Liability Company; ASTA CARE CENTER OF ROCKFORD, LLC, an Illinois Limited Liability Company, Defendants-Appellants. |
| District & No. | Third District<br>Docket No. 3-16-0348 |
| Filed | August 8, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Rock Island County, No. 15-L-136; the Hon. Joseph F. Fackel, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Alon Stein, of Stein Law Offices, of Des Plaines, for appellants.<br><br>James S. Zmuda, of Califf & Harper, P.C., of Moline, for appellee. |

JUSTICE CARTER delivered the judgment of the court, with opinion. Presiding Justice Holdridge and Justice McDade concurred in the judgment and opinion.


**OPINION**

¶ 1        Plaintiff, Performance Food Group, brought suit against the ARBA and ASTA defendants listed in the caption above for breach of contract, seeking to collect money that plaintiff was allegedly owed for food products that it had sold and delivered to defendants to be used in defendants' nursing home facilities.[1] During pretrial proceedings, plaintiff filed a motion for summary judgment, which the trial court granted after a hearing. Defendants appeal. We affirm the trial court's judgment.


¶ 2                                FACTS
¶ 3        ASTA Healthcare Company (ASTA Healthcare) operated seven skilled nursing home facilities in Illinois. The facilities were located in Bloomington, Colfax, Elgin, Toluca, Ford County, Pontiac, and Rockford. Each facility/business was set up as a separate limited liability company. ASTA Healthcare owned the real property that three of the facilities were located upon, the ones in Rockford, Pontiac, and Ford County, and had options to purchase the real property that the other four facilities were located upon. The facilities purchased their food products from plaintiff on credit (an open account) pursuant to the terms of oral or written contracts that the facilities had entered into with plaintiff. Michael Gillman was the president of ASTA Healthcare. Gillman was also the majority owner of four of the limited liability companies—ASTA Bloomington, ASTA Colfax, ASTA Elgin, and ASTA Toluca.

¶ 4        In about the middle of 2014, the ASTA entities ran into some financial problems. A hospice company that ASTA Healthcare was at least part owner of was being indicted by the Justice Department, and banks were not willing to extend lines of credit to the ASTA entities under the existing ownership. As a result, the ASTA entities could no longer function and had to change ownership. ARBA Healthcare Company (ARBA Healthcare) was formed (or had been formed) with Michael Gillman as the president of the company, and the operation of the nursing home facilities in Bloomington, Colfax, Elgin, and Toluca was transferred from ASTA Healthcare to ARBA Healthcare. Each facility was again set up as a separate limited liability company, this time under the ARBA name. The remaining three ASTA facilities were foreclosed upon and sold.

¶ 5        In February 2015, the four ARBA entities/facilities submitted customer account applications to plaintiff. When plaintiff learned of the change in ownership, it transferred the account numbers and balances from the old ASTA entities to the new ARBA entities. The ARBA entities were put on a "short leash" with plaintiff and were required, at least during the last few months, to pay upon delivery for the food products they received from plaintiff. A dispute arose because plaintiff was applying those payments to the outstanding amounts that it

---

[1]Throughout this opinion, for the convenience of the reader, we have used shortened versions of the names of the entities involved rather than the full legal name of the entities.

was owed from the corresponding ASTA entities, in the order of the oldest amounts due first. That was contrary to the requirements of ARBA Healthcare's current lender, who required that all ARBA payments be applied to ARBA accounts. Eventually the ARBA entities could not meet their payment obligations, and the businesses folded.

¶ 6 In November 2015, plaintiff filed the instant breach of contract case against the ARBA and ASTA entities listed in the caption above (collectively referred to as defendants). In January 2016, plaintiff filed a suggestion of bankruptcy with the trial court indicating that ASTA Ford County, ASTA Pontiac, and ASTA Rockford had filed for bankruptcy protection in federal bankruptcy court. Copies of the bankruptcy notices were attached to the suggestion of bankruptcy.

¶ 7 In February 2016, defendants filed their answer in this case. In their answer, defendants admitted that they had contracts with plaintiff, that they had ordered products from plaintiff, and that plaintiff had delivered those products to them. Defendants made a general denial as to the remaining allegations. Defendants also raised three affirmative defenses, which were pled as follows:

> "*FIRST AFFIRMATIVE DEFENSE: Bankruptcy*
>
> 1. [ASTA Ford County], [ASTA Pontiac], and [ASTA Rockford] have filed for Bankruptcy Protection[.]
>
> *SECOND AFFIRMATIVE DEFENSE: Payment*
>
> 1. Amounts in the complaint are incorrect and ARBAs [*sic*] paid amounts that Plaintiffs [*sic*] did not include in their complaint.
>
> *THIRD AFFIRMATIVE DEFENSE: Unjust Enrichment*
>
> 1. Plaintiff may not recover the damages sought in this action because, under the circumstances presented, it would constitute unjust enrichment." (Emphases in original.)

¶ 8 In April 2016, plaintiff filed its motion for summary judgment on its complaint for breach of contract against the four ARBA entities. Plaintiff alleged in the motion that (1) each ARBA entity was a party to a customer account application (the contract) with included terms and conditions; (2) among other things, the customer account applications provided for recovery by plaintiff of interest at a rate of 18% per year, together with attorney fees and costs; (3) each ARBA entity was a successor in interest to the business interest of a prior corresponding ASTA entity; (4) each ARBA entity and its corresponding ASTA entity were parties to an operations transfer agreement in which the ASTA entity transferred its operating assets to the ARBA entity for no consideration; (5) the operations transfer agreements and the amendments to those agreements were signed by Michael Gillman as president of both ASTA Healthcare and ARBA Healthcare; (6) in accordance with plaintiff's "understanding," the ARBA entities or their principal owners would be responsible for the account balances of the corresponding ASTA entities, so plaintiff transferred each ASTA entity's account balance to the account of its respective ARBA entity successor; (7) in accordance with established practice, plaintiff applied the payments for the ASTA/ARBA accounts to the oldest invoices first; (8) plaintiff was owed a principal balance of over $99,000 by ARBA Bloomington, over $26,000 by ARBA Colfax, over $62,000 by ARBA Elgin, and over $39,000 by ARBA Toluca;[2] (9) the

---

[2]The specific amounts were listed in the complaint and in the motion for summary judgment.

ARBA entities had breached their contracts with plaintiff and were liable for money damages; (10) the ARBA entities could not legitimately dispute the balances owed to plaintiff and had no legitimate defense for nonpayment; (11) the ARBA entities were the mere continuations and alter egos of the ASTA entities and were, therefore, liable for the account balances of the ASTA entities; and (12) in addition to the principal balances owed by the ARBA entities, plaintiff was also entitled to interest, costs, and attorney fees from the ARBA entities pursuant to the terms of the contract between the parties.

¶ 9 Attached to plaintiff's motion for summary judgment were various supporting documents, including the customer account applications, the deposition of Michael Gillman (from which many of the background facts listed above were derived), the operations transfer agreements and the first amendment to those agreements, an affidavit of attorney fees and costs, and the affidavit of Mike Spear, the plaintiff's credit manager. In his affidavit, Spear stated, among other things, that (1) beginning in about April 1996, plaintiff sold product to the ASTA entities on an open account pursuant to credit applications; (2) in about January 2015, plaintiff learned that the operations of the ASTA/ARBA facilities had changed from the ASTA entities to the ARBA entities but the principal owners of the ASTA entities and the ARBA entities had remained the same; (3) plaintiff was not informed in advance of the ARBA entities becoming the operating entities for the ASTA/ARBA facilities, which were previously operated by corresponding ASTA entities; (4) when plaintiff learned of the transfer of operations from the ASTA entities to the ARBA entities, plaintiff agreed to continue extending credit to the ARBA entities upon the credit terms previously provided to the ASTA entities, and the ASTA entities' account numbers, as established by plaintiff, were used for the ARBA entities; (5) the accounts for the ARBA entities were established months after plaintiff learned of the transfer of operations from the ASTA entities to the ARBA entities because plaintiff was informed that the account balances of the ASTA entities would be paid in full; (6) in agreeing to extend credit to the ARBA entities, plaintiff understood that the ARBA entities or their principal owners would be responsible for the account balances of the corresponding ASTA entities; (7) in accordance with established practice, plaintiff applied the payments for the ASTA/ARBA accounts to the oldest invoices first; and (8) statements of account, which would be attached to the affidavit as exhibits, were prepared and kept in the regular course of plaintiff's business and were accurate and complete to the best of Spear's knowledge and belief. Despite the statement in Spear's affidavit, however, it does not appear from the record that the statements of account were attached to the affidavit or made part of the record in this case.

¶ 10 Defendants filed a response to the motion for summary judgment and asserted, among other things, that (1) summary judgment was not appropriate because issues of material fact remained as to whether the ARBA entities were the successors or alter egos of the ASTA entities; (2) even if plaintiff's allegations were true, any matter involving an ASTA debt was a matter for the federal bankruptcy court to decide; and (3) if plaintiff applied ARBA payments to ASTA debts, such action would violate bankruptcy laws. In support of those assertions, defendants referred to various statements made by Michael Gillman in his deposition that (1) ASTA Healthcare did not own the real estate or buildings involved in some of the nursing home operations, (2) three of the nursing home operations (Ford County, Pontiac, and Rockford) were foreclosed upon and sold and were not operated by any persons related to ARBA Healthcare, (3) the ARBA facilities were taken over by a new landlord who owned the land and the buildings, and (4) the new landlord chose Michael Gillman and other former

ASTA personnel to operate the facilities. Defendants also attached to the response ownership information for the Ford County, Pontiac, and Rockford facilities, presumably to show that the new owners were not connected to ARBA Healthcare.

¶ 11 A hearing was held on the motion for summary judgment in June 2016. After listening to the arguments of the attorneys, the trial court took the motion under advisement. The trial court later issued a written ruling granting plaintiff's motion for summary judgment against the four ARBA defendants and entering judgment against the four ARBA defendants for the principal balances owed, plus interest, costs, and attorney fees. In the order, the trial court did not explain its reasoning for the grant of summary judgment. Defendants appealed.

¶ 12 ANALYSIS

¶ 13 On appeal, defendants argue that the trial court erred in granting summary judgment for plaintiff on plaintiff's complaint for breach of contract against the four ARBA defendants. Defendants assert that summary judgment should not have been granted in this case because (1) plaintiff failed to satisfy its initial burden of production in the summary judgment proceedings, (2) the automatic bankruptcy stay applied to plaintiff's claims against the ARBA defendants, and (3) granting summary judgment for plaintiff would allow plaintiff to be unjustly enriched at the expense of the bankruptcy estate. Defendants ask, therefore, that we reverse the trial court's grant of summary judgment and that we remand this case for further proceedings. Plaintiff disagrees with all of defendants' assertions and argues that the trial court's grant of summary judgment was proper and should be upheld.

¶ 14 The purpose of summary judgment is not to try a question of fact but to determine if one exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). Summary judgment should be granted only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2014); *Adams*, 211 Ill. 2d at 43. Summary judgment should not be granted if the material facts are in dispute or if the material facts are not in dispute but reasonable persons might draw different inferences from the undisputed facts. *Adams*, 211 Ill. 2d at 43. Although summary judgment is to be encouraged as an expeditious manner of disposing of a lawsuit, it is a drastic measure and should be allowed only where the right of the moving party is clear and free from doubt. *Id.* In appeals from summary judgment rulings, the standard of review is *de novo*. *Id.* When *de novo* review applies, the appellate court performs the same analysis that the trial court would perform. *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 43.

¶ 15 I. Whether Plaintiff Satisfied Its Initial Burden of Production

¶ 16 As noted above, in support of its argument on appeal, defendants assert first that summary judgment should not have been granted for plaintiff because plaintiff failed to satisfy its initial burden of production. More specifically, defendants contend that plaintiff failed to present sufficient evidence to establish that it was entitled to a grant of summary judgment in that (1) several genuine issues of material fact remained as to such matters as whether the ARBA entities were the successors or alter egos of the ASTA entities, whether the ARBA entities were responsible (by agreement or otherwise) for the amounts owed to plaintiff by the corresponding ASTA entities, and as to the amount of the principal balances owed, if any, by

the ARBA entities to plaintiff and (2) plaintiff failed to present any documentary evidence to establish the alleged balances owed by the ARBA entities or to show how the payments that the ARBA entities made to plaintiff were applied.

¶ 17 Plaintiff disagrees with defendants' assertion and claims, instead, that it satisfied its burden of production in the summary judgment proceeding because it introduced undisputed evidence, including the deposition of Michael Gillman (defendants' president) and the affidavit of Mike Spear (plaintiff's credit manager), that showed that the ARBA defendants breached their respective contracts with plaintiff; that the ARBA entities were the alter egos or successors of the ASTA entities; that as successor entities, the ARBA entities were legally liable for the amounts that the ASTA entities owed plaintiff; and that plaintiff was, therefore, entitled to judgment as a matter of law. Plaintiff claims further that once it met its initial burden of production and the burden shifted to defendants, defendants failed to introduce any evidence or factual basis to raise a genuine issue of material fact that would preclude a grant of summary judgment for plaintiff. In making that claim, plaintiff contends that any objections that defendants had to the sufficiency of the Mike Spear affidavit have been forfeited on appeal because defendants failed to raise those objections in the trial court. Plaintiff contends further that defendants have also forfeited their affirmative defenses because they failed to plead any facts in the trial court to support those affirmative defenses.

¶ 18 In a summary judgment proceeding, the burden of persuasion is always on the moving party to establish that there are no genuine issues of material fact and that moving party is entitled to judgment as a matter of law. See *Triple R Development, LLC v. Golfview Apartments I, L.P.*, 2012 IL App (4th) 100956, ¶ 12. The burden of production, however, may shift during the course of the proceedings. See *id.* Initially, the burden of production is on the moving party. See *id.* In a very general sense, to satisfy the initial burden of production, the moving party must present evidence that, if uncontradicted, would entitle the moving party to a directed verdict at trial. See *id.* ¶ 16. More specifically, if the defendant is the moving party, to satisfy the initial burden of production, the defendant must affirmatively establish through its pleadings and supporting documents that some element of the case must be resolved in its favor or that there is an absence of evidence to support the plaintiff's case. See *Beltran*, 2013 IL App (1st) 121128, ¶ 43. However, if the plaintiff is the moving party, to satisfy the initial burden of production, the plaintiff must establish through its pleadings and supporting documents the validity of its factual position on all of the contested elements of the cause of action (all of the essential elements of the plaintiff's claim that are not admitted in the pleadings). *Triple R*, 2012 IL App (4th) 100956, ¶ 16; 4 Richard A. Michael, *Illinois Practice*, Civil Procedure Before Trial §§ 38.5, 40.3 (2d ed. 2011). Once the moving party satisfies its initial burden of production in the summary judgment proceeding, the burden of production shifts to the nonmoving party (the party opposing summary judgment) to present evidence to establish that there are genuine issues of material fact and/or that the moving party is not entitled to judgment as a matter of law. See *Triple R*, 2012 IL App (4th) 100956, ¶¶ 12, 16; Michael, *supra* § 40.3. At that point, the nonmoving party may not rely solely upon its pleadings to raise an issue of material fact. *Triple R*, 2012 IL App (4th) 100956, ¶¶ 12, 16. Nor is mere argument alone sufficient to raise such an issue. *Id.* ¶ 16.

¶ 19 In this particular case, plaintiff was the party who had moved for summary judgment. To satisfy the initial burden of production, plaintiff had to establish through its pleadings and supporting documents all of the essential elements of its claim or cause of action that were not

admitted by defendant. Se*e Triple R*, 2012 IL App (4th) 100956, ¶¶ 7, 12; Michael, *supra*, § 38.5. Plaintiff's claim in this case was a breach of contract. The essential elements that plaintiff had to establish, therefore, were that (1) there was a valid and enforceable contract between plaintiff and defendants, (2) plaintiff performed the contract, (3) defendants breached the contract, and (4) plaintiff suffered injury as a result of that breach. See *Burkhart v. Wolf Motors of Naperville, Inc.*, 2016 IL App (2d) 151053, ¶ 14.

¶ 20    After having reviewed the record in the present case, we find that plaintiff's pleadings and supporting documents were sufficient to establish all of the essential elements of the cause of action. As to the first element, a valid and enforceable contract between the parties, plaintiff attached the written contracts (the customer account applications) to both the complaint and the motion for summary judgment, and defendants admitted in their answer that a contract existed between the parties. In addition, Michael Gillman, the president of ASTA Healthcare and ARBA Healthcare, confirmed in his deposition that there was an agreement between the parties for the purchase/sale of food products. Regarding the second element, that plaintiff performed the contract, Gillman testified in his deposition that plaintiff had provided food products to defendants, and Mike Spear, plaintiff's credit manager, attested in his affidavit that plaintiff had sold food products to defendant on an open account pursuant to credit applications since about 1996. Although defendants have sought on appeal to challenge the sufficiency of Spear's affidavit, they have forfeited the ability to do so because they failed to raise those challenges in the trial court. See *Cordeck Sales, Inc. v. Construction Systems, Inc.*, 382 Ill. App. 3d 334, 383-84 (2008) (a party may not challenge the sufficiency of a summary judgment affidavit for the first time on appeal—failure to raise objections to such an affidavit in the trial court results in forfeiture of those objections). As for the third essential element that defendants breached the contract, plaintiff again presented the deposition testimony of Gillman and the affidavit of Spear. Those two documents established that the ARBA entities were the alter egos or successors in interest of the ASTA entities (the ARBA entities took over for the ASTA entities because the ASTA entities had financial problems and could no longer obtain credit, no consideration was paid for the transfer of the assets/businesses from the ASTA entities to the ARBA entities, and Gillman was president of both ASTA Healthcare and ARBA Healthcare) and that the outstanding balances that were due and owing for the combined accounts had not been paid off by the ARBA entities after they took over for the ASTA entities. Finally, with regard to the fourth element that plaintiff suffered damages from the breach, the Spear affidavit attested to the specific amounts that were due and owing from each of the ARBA defendants, and the contract documents established that plaintiff was also entitled to interest, costs, and attorney fees pursuant to the terms of the contract. Again, although defendant seeks on appeal to challenge the sufficiency of the Spear affidavit as to the amounts that were due and owing because the actual invoices were not attached to the affidavit, defendants have forfeited that challenge by failing to raise it in the trial court. See *id.* In addition, since defendants failed to contradict Spear's affidavit with a counteraffidavit or other admissible evidence, Spear's statement regarding the amounts that the ARBA defendants failed to pay must be taken as true for the purposes of the motion. See *Purtill v. Hess*, 111 Ill. 2d 229, 241 (1986); *Cordeck Sales, Inc.*, 382 Ill. App. 3d at 384. Contrary to defendants' assertion on appeal, Gillman's deposition testimony cannot be construed as contradicting the Spear affidavit as to the amounts due and owing, even though Gillman testified that the ARBA entities paid cash on delivery for the last

two months, because Gillman ultimately testified that he had no idea as to the amounts due and owing or as to whether plaintiff's invoices were correct.

¶ 21    Since plaintiff presented sufficient evidence in its pleadings and supporting documents to satisfy its initial burden of production in the summary judgment proceeding, the burden then shifted to defendants, as the nonmoving party, to establish that there were genuine issues of material fact and/or that plaintiff was not entitled to judgment as a matter of law. Upon our review of the record, we must conclude that defendants failed in that burden. As noted in the discussion above, defendants failed to present any evidence to establish that there was a genuine issue of material fact as to plaintiff's claim of breach of contract.

¶ 22    The only remaining matters regarding the sufficiency of the proof that plaintiff was entitled to summary judgment were defendants' three affirmative defenses. Defendants, however, failed to plead any facts to support those defenses and, instead, presented nothing more than bare conclusory statements. The affirmative defenses were forfeited, therefore, and plaintiff had no duty to respond to or negate those defenses. See 735 ILCS 5/2-613(d) (West 2014) (the facts constituting any affirmative defense must be plainly set forth in the answer or reply); *In re Estate of Wrage*, 194 Ill. App. 3d 117, 122 (1990) (respondent's affirmative defenses failed to provide any factual basis for her position and were, therefore, inadequately pled); *Kaufman & Broad Homes, Inc. v. Allied Homes, Inc.*, 86 Ill. App. 3d 498, 501 (1980) (the facts constituting any affirmative defense must be plainly set forth in the answer or reply so as to ensure that the reviewing courts are not asked to rule upon questions which were not raised and argued below); *Culligan Rock River Water Conditioning Co. v. Gearhart*, 111 Ill. App. 3d 254, 259 (1982) (a defense that is not properly pled is considered to be forfeited).

¶ 23                    II. Whether the Automatic Bankruptcy Stay
                    Applied to the ARBA Defendants in This Case

¶ 24    Defendants assert second in support of their argument on appeal that summary judgment should not have been granted for plaintiff in this case because it was precluded by the automatic bankruptcy stay that arose when the ASTA entities filed for bankruptcy protection in federal court. Defendants maintain that the automatic bankruptcy stay applied to plaintiff's claim against the ARBA defendants because plaintiff was asserting in this case that the ASTA and ARBA entities were one and the same and was seeking to collect ASTA debt through the ARBA entities. According to defendants, plaintiff's attempt in this case to collect from the ARBA defendants debt that was owed by the ASTA entities, which were in bankruptcy, was nothing more than an attempt to make an end run around the bankruptcy protection and the automatic stay.

¶ 25    Plaintiff disagrees with defendants' assertion and contends that the bankruptcy stay has no effect on plaintiff's claim against the ARBA entities because the ARBA entities did not file for bankruptcy protection and are not, therefore, debtors to which the automatic stay applies. Plaintiff maintains, therefore, that summary judgment was properly granted in its favor.

¶ 26    Under section 362 of the federal Bankruptcy Code, the filing of a bankruptcy petition operates as an automatic stay as to certain actions that were brought, or could have been brought, against the debtor. See 11 U.S.C. § 362 (2012). The automatic stay, however, protects only the debtor and does not protect nondebtor entities. *Pavers & Road Builders District Council Welfare Fund v. Core Contracting of N.Y., LLC*, 536 B.R. 48, 51 (Bankr. E.D.N.Y. 2015). "Just because two entities are *alter egos* does not make them both debtors under the

- 8 -

Bankruptcy Code. It simply means they are liable for each other's debts." (Emphasis in original.) *Id.* If a nondebtor entity wants the protection of the automatic stay, all it has to do is file its own bankruptcy petition. *Id.* In the alternative, under certain circumstances, the debtor or another party in interest may go to the bankruptcy court and obtain an injunction to prevent outside litigation from proceeding against nondebtor entities. See *id.* at 51-52. "[N]on-bankruptcy courts have concurrent jurisdiction with the bankruptcy court to determine the scope of the automatic stay." *Id.* at 51. Therefore, absent an injunction from the federal bankruptcy court, a state trial court is free to determine whether an automatic bankruptcy stay applies to certain nondebtor entities in the case before it and whether the trial court shall proceed to judgment in that case. See *id.*

¶ 27    Applying the above legal principles to the facts of the present case, we find that the ARBA entities were not the debtor for bankruptcy purposes and were not automatically protected by the bankruptcy stay, even though plaintiff alleged that the ARBA entities were the alter egos of the ASTA entities. See *id.* at 51, 53. The trial court in the instant case had concurrent jurisdiction with the bankruptcy court to determine whether the stay applied to the ARBA entities, who had not filed for bankruptcy protection. See *id.* at 51. Having determined that the bankruptcy stay did not apply to the ARBA entities, the trial court correctly rejected defendants' argument that the stay precluded a grant of summary judgment for plaintiff. Had the ARBA entities sought to ensure a different result, they could have filed their own petition for bankruptcy protection in federal court or they (or the ASTA entities) could have sought to obtain an injunction from the federal bankruptcy court to prevent the instant case from moving forward. See *id.* at 51-53.

¶ 28    In rejecting this particular assertion of defendants, we must take a moment to comment upon the case of *Ng v. Adler*, 518 B.R. 228 (Bankr. E.D.N.Y. 2014), a case that is heavily relied upon by defendants in support of their assertion that the automatic bankruptcy stay applies to the ARBA entities in this case. Although we do not agree with defendants that *Adler* directly supports their assertion in this case, to the extent that the *Adler* case can be read as doing so, we disagree with the decision reached by the court in the *Adler* case. We believe that the decision in the *Pavers* case, cited above, a later decision by the same district court, correctly shows how the above legal principles should be applied in the instant factual context. See *Pavers*, 536 B.R. at 51-53. We note that both of the courts in *Pavers* and in *Adler* followed the same general rule—that under normal circumstances, the automatic bankruptcy stay does not apply to nondebtor entities. See *id.*; *Adler*, 518 B.R. at 246-47. The difference in the outcome of the two cases can be attributed to the manner in which the two courts applied the general rule under the unique factual and procedural circumstances of each case. See *Pavers*, 536 B.R. at 51-53; *Adler*, 518 B.R. at 246-50.

¶ 29                        III. Whether Summary Judgment for Plaintiff
                    Should Have Been Denied Based on Unjust Enrichment

¶ 30    As its final assertion in support of its argument on appeal, defendants claim that summary judgment should not have been granted for plaintiff because doing so—after plaintiff wrongly applied payments from the ARBA entities to the balances owed by the ASTA entities, who had filed for bankruptcy protection—would allow plaintiff to be unjustly enriched at the expense of the bankruptcy estate.

¶ 31        We do not agree with defendants' claim for two reasons. First, as noted above, defendants pled no specific facts to support or establish their affirmative defense of unjust enrichment. That defense, therefore, was forfeited, and plaintiff was not required to respond to or negate that defense. See *Estate of Wrage*, 194 Ill. App. 3d at 122; *Kaufman*, 86 Ill. App. 3d at 501; *Culligan*, 111 Ill. App. 3d at 259. Second, the circumstances of this case were not the type to which a claim of unjust enrichment would apply. See Restatement (Third) of Restitution and Unjust Enrichment § 1 (2011) (discussing unjust enrichment in general); *Nesby v. Country Mutual Insurance Co.*, 346 Ill. App. 3d 564, 566-67 (2004) (the theory of unjust enrichment is an equitable remedy based upon a contract implied in law and is based on the concept that a person should not be allowed to enrich himself unjustly at the expense of another); *People ex rel. Hartigan v. E&E Hauling, Inc.*, 153 Ill. 2d 473, 497 (1992) (to recover under a theory of unjust enrichment, a plaintiff must show that the defendant voluntarily accepted a benefit that would be inequitable for the defendant to retain without payment). As set forth previously, plaintiff in this case sold and delivered food products to defendants. Defendants used those products but then failed to pay what was due and owing. Although some of the ASTA entities later declared bankruptcy, the ARBA entities did not do so, and defendants as a group did not seek to have the bankruptcy court issue an injunction to prevent plaintiff from pursuing its breach of contract claim against the ARBA entities in this case. When presented with the matter, the trial judge apparently decided that the bankruptcy stay did not apply to the ARBA entities. Under the factual circumstances before us, we find no basis upon which to apply a claim of unjust enrichment. See Restatement (Third) of Restitution and Unjust Enrichment § 1 (2011); *Nesby*, 346 Ill. App. 3d at 566-67; *E&E Hauling*, 153 Ill. 2d at 497.

¶ 32                                   CONCLUSION
¶ 33        For the foregoing reasons, we affirm the judgment of the circuit court of Rock Island County.

¶ 34        Affirmed.