2025 IL App (1st) 240523-U

Fourth Division
Filed June 18, 2025

No. 1-24-0523

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | |
|---|---|
| ANDREW FIELD, Individually and Derivatively as a Member of Outlier Solutions, LLC, and WILLIAM MASS, Individually, Derivatively as a Member of Outlier Solutions, LLC, and as Voting Trustee,<br><br>    Plaintiffs<br><br>(Andrew Field, Plaintiff and Counterdefendant-Appellant),<br><br>    v.<br><br>RYAN LISS, SANDY BANK, and OUTLIER SOLUTIONS, LLC, an Illinois Limited Liability Company,<br><br>    Defendants<br><br>(Outlier Solutions, LLC, Defendant and Counterplaintiff-Appellee). | Appeal from the Circuit Court of Cook County<br><br>No. 2021 CH 01884<br><br>The Honorable Thaddeus L. Wilson, Judge, presiding. |

JUSTICE OCASIO delivered the judgment of the court.
Presiding Justice Rochford and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*: Plaintiff did not show a *prima facie* reversible error in the circuit court's grant of partial summary judgment for defendant.

¶ 2    Plaintiff, Andrew Field, filed a complaint against defendants, Ryan Liss, Sandy Bank, and Outlier Solutions, LLC (Outlier), alleging that they breached their fiduciary duty and concealed information. Outlier filed a counterclaim alleging that Field breached the parties' separation agreement. Outlier filed a motion for partial summary judgment, and the circuit court granted Outlier's motion. Field appeals. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Outlier developed and patented methods for creating re-pulpable, insulated paper products. Field served on Outlier's Board of Managers with Liss and Bank. While serving as a manager of Outlier, Field withdrew $7,500 from Outlier's bank account to pay for personal expenses. Outlier closed the bank account to prevent additional withdrawals. Field was subsequently removed from all of Outlier's bank accounts and was no longer permitted to use Outlier's credit cards. Field then used Outlier's debit card, copied from a receipt, to make personal purchases.

¶ 5        In or around June 2018, Outlier entered into a contract with Slingshot Product Development Group to develop and test packaging products. One of those products was a recyclable, reusable, and biodegradable paper product (the paper product) and another was a propriety thermal coating product (the coating product). Outlier also entered a contract into with Lyco Works Incorporated, which would support the development and testing of the paper product and lead the patent protection strategy. If the paper product passed testing, patent applications would be filed, and ownership of the paper product would be transferred to Outlier upon payment of the agreed amount.

¶ 6        Field also sold or promised to sell membership interests in Outlier without the required approval of Outlier's other members per its operating agreement. Field sold Outlier membership interests at a reduced price. In August 2020, Field sold membership interests without Outlier's approval to Robert Rosenbaum at a 33.33 % discount to the equity value Outlier was offering interests to outside investors to raise capital for the paper product. Field had these proceeds wired to his personal account, rather than to Outlier's bank account.

¶ 7        In October 2020, to continue testing and developing the paper product, Outlier decided to raise additional capital. Around this time, Outlier's scientist informed the board that the coating product, which could have application to the paper product, had performed well in testing. The testing results were preliminary and speculative. Outlier neither owned this product nor had filed a patent application. The members of Outlier's board, which included Field, agreed to keep the information regarding the coating product confidential pending further testing and until Outlier

entered into an agreement to pay for the ownership of the product. Despite the board's agreement, Field shared confidential test results with Outlier members, who then subscribed for more than their pro rata of membership interests during the capital raise.

¶ 8       Additionally, Field drafted, backdated, and sent a letter on Outlier's behalf, without the board's knowledge, purporting to offer a woman named Samantha Roberts employment at Outlier in 2017 with an annual salary of $78,000. This letter was attached to an email verifying Roberts' employment and further indicating Roberts had been offered a promotion at Outlier. Outlier was not formed until 2018, and it has never had employees.

¶ 9       Outlier sent a letter to Field informing him that, in accordance with its operating agreement, his conduct was being treated as a dissociation event. Consequently, he was removed as a manager and member of Outlier. The board offered Field the option to resign instead of being terminated for cause.

¶ 10      On November 11, 2020, Field resigned from the board and signed a separation agreement dated November 30, 2020. As part of the separation agreement, Field was required to return any company property in his possession and update any social media or email signatures that identified him as a manager of the company. Field agreed that he would not present himself as having the authority to act for, on behalf of, or in the name of Outlier. Additionally, Outlier agreed that Field could retain his membership interest on the condition that he complied with the terms of the separation agreement. The separation agreement stated that, if Field violated the separation terms, Outlier could regard his resignation as a removal for cause. This action would enable Outlier to redeem his membership interest and regard Field as dissociated from the company. The settlement agreement also required both parties to maintain confidentiality about its terms.

¶ 11      In February 2021, Field, using his personal email account, sent individuals not affiliated with Outlier a copy of Outlier's investor materials (termed an investor deck), which contained information relating to product development. Field's signature block on the email identified him as the "Founder and Managing Member of Outlier Solutions." After Outlier discovered that Field

disclosed its investor deck to individuals outside of the company, it informed him he had breached the separation agreement.

¶ 12    Field filed a complaint seeking injunctive relief, an accounting of all member interests, rescission, and a declaratory judgment to remove Liss and Banks as managers. Field also asserted that Liss and Banks breached their fiduciary duties and withheld important information that could have influenced Field's interests in the company. Field's complaint was dismissed without prejudice on October 7, 2021. Subsequently, Field's motion to voluntarily non-suit was granted on November 29, 2021.

¶ 13    While the complaint was pending, Outlier filed counterclaims against Field alleging breach of the separation agreement, breach of Outlier's operating agreement, and breach of fiduciary duty. Outlier alleged Field breached the separation agreement by holding himself out as a managing member of Outlier, failing to return Outlier's property containing confidential information, sharing Outlier's investor deck, continuing to conceal his efforts to sell Outlier membership interests, and filing a lawsuit against Outlier, Liss, and Banks. Further, Outlier alleged that it incurred substantial damage due to Field's breaches. Specifically, it alleged that Field's actions deprived it of the opportunity to issue and sell interest to raise capital, impacted the protected nature of its confidential information, and caused it to incur $100,000 in attorney fees. Further, its only available remedy was that as prescribed in the separation agreement, allowing it to declare a dissociation event.

¶ 14    Outlier filed a motion for partial summary judgment on its counterclaim for breach of the separation agreement. In its motion, Outlier argued that it complied with section 12 of the separation agreement by providing Field with written notice of his breaches and by not taking any action against Field until 21 business days after providing notice. Outlier also argued that Field failed to disclose that he sold his membership interest and he had promised to transfer his membership interests. This failure to disclose was a breach of Section 9 of the separation agreement. Outlier argued that it "incurred substantial damages due to Field's admitted breaches."

¶ 15 In its order granting Outlier's motion, the circuit court concluded that Outlier fulfilled its obligations under the separation agreement, that Field materially breached the separation agreement, that Outlier suffered damages because of the breach, and that, according to the terms of the separation agreement, Field's breach entitled Outlier to treat his resignation as a removal for cause.

¶ 16 On February 13, 2024, the circuit court entered judgment disposing of Outlier's remaining counterclaims. This appeal timely followed.

¶ 17 II. ANALYSIS

¶ 18 At the outset, it is important to note that Outlier did not submit an appellee's brief. On November 4, 2024, we entered an order to take this case solely on the record and Field's brief. Generally speaking, the court will not act as an advocate for an appellee who has not filed a brief. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976). However, a reviewing court may decide the appeal on the merits if the record is simple and the issues can be easily decided without the aid of an appellee's brief, or it may reverse the trial court if the appellant's brief demonstrates *prima facie* reversible error that is supported by the record. *Id.* Here, the record is quite voluminous, and we do not believe that this case can be decided without the aid of an appellee's brief, therefore the question before us is whether Field has demonstrated a *prima facie* reversible error. *Id.* "*Prima facie* means, at first sight, on the first appearance; on the face of it; so far as can be judged from the first disclosure; presumably; a fact presumed to be true unless disproved by some evidence to the contrary." *Id.* at 132.

¶ 19 Field argues that the circuit court erred in granting partial summary judgment for Outlier. Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). A genuine issue of fact precluding summary judgment exists where the material facts are disputed, or if the material facts are undisputed, reasonable persons might draw different inferences from

the undisputed facts. *Wolff v. Bethany North Suburban Group*, 2021 IL App (1st) 191858, ¶ 29. On a motion for summary judgment, the movant has the burden of producing evidence that, if not contradicted, would entitle it to judgment. *Performance Food Group Co. v. ARBA Care Center of Bloomington, LLC*, 2017 IL App (3d) 160348, ¶ 18. When a plaintiff (or counterplaintiff) moves for summary judgment, it can only satisfy that initial burden by "establish[ing] through its pleadings and supporting documents the validity of its factual position on all of the contested elements of the cause of action." *Id.* Once the movant meets its initial burden of production, the burden then shifts to the nonmoving party "to present evidence to establish that there are genuine issues of material fact and/or that the moving party is not entitled to judgment as a matter of law." *Id.* Mere argument alone is insufficient to raise an issue of material fact. *Id.* Although summary judgment is an expeditious manner of disposing of a lawsuit, it is a drastic measure and should only be allowed where the right of the moving party is clear and free from doubt. *Jewish Hospital v. Boatmen's National Bank*, 261 Ill. App. 3d 750, 754 (1994). We review the circuit court's decision to grant summary judgment de novo. *Wolff*, 2021 IL App (1st) 191858, ¶ 30.

¶ 20                                        A. Confidentiality

¶ 21        First, Field argues the circuit court committed error by resolving a genuine dispute of material fact regarding whether the investor deck was confidential information. Field contends the court ignored both the definition of "confidential information" in the operating agreement, as incorporated in the separation agreement, and his evidence that information in the investor deck regarding Outlier's products and patent process was public information.

¶ 22        As noted above, we may reverse the circuit court's judgment if Field presents a *prima facie* reversible error that is supported by the record. *Talandis*, 63 Ill. 2d at 133. Additionally, "[i]t is appellant's duty to present a complete record on appeal so that the reviewing court is fully informed regarding issues to be resolved. [Citations.] Absent an adequate record on appeal, it is presumed that the trial court's judgment conforms to the law and has a sufficient factual basis." *Davis v. Allstate Insurance Co.*, 147 Ill. App. 3d 581, 584-85 (1986). Field has not included in the record

the exhibit filed under seal by Outlier which contained the investor deck. Without the investor deck, it is impossible for this court to review the circuit court's findings regarding the confidentiality of the information contained therein, and we must assume that the court's findings and rulings were correct. *Id.* Therefore, we find there is no basis to find that Field presented a *prima facie* reversible error with regard to the investor deck. See *Coleman v. Windy City Balloon Port, Ltd.*, 160 Ill. App. 3d 408, 419 ("When portions of the record are lacking, it will be presumed that the trial court acted properly in entry of the challenged order and that the order is supported by the part of the record not before the reviewing court; that is, in the absence of a proper record, it is presumed that sufficient evidence was presented to support the trial court's judgment and, thus, to require affirmance of the judgment.").

¶ 23                                    B. Notice and Cure

¶ 24    Second, Field argues the circuit court committed an error in finding there was no genuine dispute of fact as to whether the alleged breaches were curable. Specially, that there is a genuine issue of fact as to whether the inclusion of "Managing Member" on the email signature block and sending the investor deck were curable breaches. Field also argues that the court should not have granted summary judgment as Outlier provided him with no notice of the alleged breach of failure to return company property, the information deck.

¶ 25    Section 12 of the separation agreement states:

> "The parties agree that, to the extent either believes that there has been
> a breach of any provision of this Agreement, the non-breaching party
> will provide written notice to the alleged breaching party within seven
> (7) business days of actual knowledge of the alleged breach. The
> responding party will have seven (7) business days from the date of
> receipt of such notice to cure, if curable, such alleged breach. Counsel
> for the parties will work to resolve the matter in good faith for a period

of fourteen days after the response is provided before any action can be

taken."

¶ 26    Outlier provided Field with written notice of his breach as required by Section 12 of the separation agreement. On February 15, 2021, Outlier notified Field that he breached the separation agreement by holding himself out as a manager after his resignation and by disclosing Outlier's confidential information to third parties. Additionally, Outlier provided clarification of these breaches upon Field's request on February 21, 2021. Outlier did not file its counterclaim alleging Field's breaches of the separation agreement until June 22, 2021.

¶ 27    Section 12 grants the breaching party seven days after notice of alleged breach to cure it, but only if the breach is in fact curable. Field argues that there is a genuine issue of fact as to whether the alleged breaches are curable. Field contends that he cured any alleged breach by removing the title of "managing member" from his signature block and further he directed the recipients of the email containing the investor deck to immediately delete the materials. While Outlier's emails regarding Field's breach of the separation agreement did not include any notice that Field possessed company property, Field admitted during his deposition that he possessed that investor deck. He signed the separation agreement acknowledging that he was to return any company property "no later than 3:00 p.m. on Monday November 30, 2020." Field then disclosed the investor deck without the permission of Outlier. "Moreover, just as it is impossible to unring a bell, once disclosed, trade secrets and confidential information lose their secrecy forever and, '[s]ince the confidentiality of this information can never be regained, the [threatened] injuries would indeed be irreparable.' " *PepsiCo, Inc. v. Redmond*, No. 94-cv-6838, 1996 WL 3965 (N.D. Ill. Jan. 2, 1996), *30 (quoting *Metropolitan Life Insurance Co. v. Usery*, 426 F. Supp. 150, 172 (D.D.C 1976)). Field's breaches of maintaining and disclosing the investor deck caused irreparable harm to Outlier—those breaches could not be cured. We find Field did not present a *prima facie* reversible error.

¶ 28                                    C. Injury and Damages

¶ 29     Finally, Field argues that the circuit court erred in finding that Outlier was injured. Field argues that since Outlier could not prove actual damages and that it "failed to offer any evidence of actual damages it suffered from Field's breaches."

¶ 30     "An alleged injury is defined as irreparable when it is of such nature that the injured party cannot be adequately compensated with monetary damages and damages cannot be measured by pecuniary standards." *Ron & Mark Ward, LLC v. Bank of Herrin*, 2024 IL App (5th) 230274, ¶ 62 (citing *Happy R Securities, LLC v. Agri-Sources*, LLC, 2013 IL App (3d) 120509, ¶ 13). An adequate remedy at law is one that is "clear, complete, and as practical and efficient to the ends of justice and its prompt administration as the equitable remedy." *K.F.K. Corp. v. American Continental Homes, Inc.*, 31 Ill. App. 3d 1017, 1021 (1975). If a party's injury cannot be compensated with monetary damages, then it does not have an adequate remedy at law. See *Lumbermen's Mutual Casualty. Co. v. Skyes*, 384 Ill. App. 3d 207, 230-31 (2008). When there is no adequate remedy at law a party may seek equitable relief. *City of Rock Falls v. Aims Industrial Services, LLC*, 2024 IL 129164, ¶ 19.

¶ 31     Here, Field argues that Outlier cannot prove it was damaged. Field cites *CaramelCrisp, LLC v. Putnam*, No. 19-cv-02699, 2023 WL 422892 (N.D. Ill. Jan. 26, 2023). In *CaramelCrisp*, the plaintiff sued a former employee for breach of contract and alleged the defendant maintained privileged information in violation of the termination agreement. *Id.* at *3. In 2015, the parties entered a confidentiality and non-compete agreement. *Id.* at *1. In 2019, prior to her termination, the defendant sent five emails from her work email address to her personal emails with a total of 43 attachments. *Id.* These attachments included information such as the plaintiff's popcorn formula, batch pricing, product weights, production process, development and distribution agreements, supplier information, customer service reports, and market research. *Id.* The defendant also maintained a USB drive, which had a complete set of the plaintiff's formulas and specifications. *Id.* Following the defendant's termination, the plaintiff informed her that it was aware of the emails containing confidential information that she sent to her personal account. *Id.*

at *2. The defendant indicated she would comply with the 2015 confidentiality agreement, and she forwarded the five emails to the plaintiff and informed them that she deleted them from her personal account. *Id.*

¶ 32 Shortly thereafter, the plaintiff emailed the defendant informing her that she "improperly accessed the Company's computer system and took its trade secrets" and other highly confidential information. *Id.* It also sent the defendant a list of demands. *Id.* In response, the defendant tendered the USB drive to the plaintiff. The plaintiff filed a lawsuit claiming the defendant had violated the 2015 confidentiality agreement, and it also filed a motion for a temporary restraining order, which the court granted. The Court ordered the defendant to turn over her personal devices to a third-party forensic analyst. *Id.* The search of the devices yielded a spreadsheet containing a January 2013 iteration of the plaintiff's recipes, and the plaintiff admitted that there was no information that the defendant had disclosed the confidential information to any third parties without permission. *Id.*

¶ 33 The plaintiff filed a motion for partial summary judgment and the court considered the issues of breach and damages. *Id.* About the issue of damages, the defendant argued that even if she breached the termination agreement, the plaintiff could not produce support for its damages claim. *Id.* at *4. The plaintiff argued its forensic expert fees should be considered damages and showed it was entitled to nominal damages. *Id.* The court found the plaintiff could not establish an entitlement to nominal damages under Illinois law as it requires a showing of actual damages for a breach of contract claim. *Id.* Further, the plaintiff could not show it was harmed by the defendant's alleged breach. *Id.* at *5. With respect to the plaintiff's request for injunctive relief as the contract stated the defendant "agree[d] to the granting of injunctive relief *** without proof of actual damages." *Id.* at *5. The court found this argument moot as it had granted the plaintiff a temporary restraining order. *Id.* at *6. Further, the record failed to show that the plaintiff lacked an adequate remedy at law as it had two pending claims seeking to address the conduct at issue. *Id.* at n.4.

¶ 34        Here, unlike *CaramelCrisp*, Field disclosed confidential information to a third party without the permission of Outlier. Courts have found that competitive loss can inflict irreparable injury and lack inadequate remedy at law due to the difficulty in calculating the loss of existing and future business. *Liebert Corp. v. Mazur*, 357 Ill. App. 3d 265, 287 (2005) (citing *McRand v. Van Beelen*, 138 Ill. App. 3d 1045, 1055 (1985)). As attested in Liss's affidavit, the investor deck contains information that is not known to its competitors. Outlier made reasonable efforts to protect this information by limiting access to the investor deck and requiring confidentiality agreements. As discussed above, once Field disclosed the investor deck without Outlier's permission, he caused irreparable harm to Outlier by disclosing information not known to its competitors.

¶ 35        Outlier sought equitable relief as specified by the separation agreement. The parties agreed "that they would be greatly injured by, and have no adequate remedy at law for, the breach of their respective obligations under this Agreement." Section 12 of the separation agreement further provides:

> "Accordingly, in the event of your breach of this Agreement or any action or inaction which would result in a breach of this Agreement or the Operating Agreement, [Outlier] shall be entitled, in addition to all other remedies at law and equity, to treat your resignation as a removal for Cause and declare a Dissociation Event entitling [Outlier] to exercise all such rights available to it under the Operating Agreement."

¶ 36         "[P]arties by an express agreement may contract for an exclusive remedy that limits their rights, duties[,] and obligations." *Hicks v. Airborne Express, Inc.*, 367 Ill. App. 3d 1005, 1010 (2006). "Illinois courts have recognized and enforced exclusive remedy provisions, even when the contract omits the word 'exclusive,' when the contract as a whole warrants that construction." *Id.* at 1011. Further, "[a]n exclusive remedy clause will be enforced unless it violates public policy or something in the social relationship of the parties works against upholding the clause." *W.E. Erickson Construction, Inc. v. Chicago Title Insurance Co.*, 266 Ill. App. 3d 905, 910 (1994). The language of the separation agreement created an exclusive remedy; Outlier was permitted to treat

a breach by Field as a dissociation event as defined by the operating agreement. Field breached the separation agreement and Outlier was entitled to the agreed remedy. Therefore, we find that Field has not demonstrated *prima facie* reversible error in his brief.

¶ 37                                      III.  CONCLUSION

¶ 38          For the reasons set forth above, we affirm the judgment of the circuit court.

¶ 39          Affirmed.