# Illinois Official Reports

## Appellate Court

**_Deutsche Bank National Trust Co. v. Barrera_, 2020 IL App (3d) 180419**

| | |
|---|---|
| Appellate Court Caption | DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for Home Equity Mortgage Loan Asset-Backed Trust, Series INABS 2005-B, Home Equity Mortgage Loan Asset-Backed Certificates, Series INABS 2005-B, Plaintiff-Appellant, v. TORIBIO BARRERA, a/k/a Toribio Barrera-Vieyra, a/k/a Toribo Barrera; ERIKA BARRERA; UNKNOWN OWNERS; and NONRECORD CLAIMANTS, Defendants-Appellees. |
| District & No. | Third District<br>No. 3-18-0419 |
| Filed<br>Modified upon<br>denial of rehearing | December 7, 2020<br><br>January 18, 2022 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 14-CH-2464; the Hon. Mark Thomas Carney, Judge, presiding. |
| Judgment | Affirmed; cause remanded. |
| Counsel on Appeal | Robert J. Deisinger, of Anselmo Lindberg & Associates, LLC, of Naperville, for appellant.<br><br>Stephen T. Saporta, of Saporta Law Offices, of Joliet, for appellee Toribio Barrera. |

No brief filed for other appellees.

Panel                    JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Justices Lytton and Daugherity concurred in the judgment and opinion.

## OPINION

¶ 1      The plaintiff, Deutsche Bank National Trust Company, filed a residential mortgage foreclosure action against defendant Toribio Barrera (Barrera). Barrera claimed that he tendered a timely payment to the bank sufficient to make the loan current before the bank initiated foreclosure proceedings. The parties filed cross-motions for summary judgment. The trial court granted Barrera's motion and denied the bank's motion. The bank appeals the trial court's judgment.

¶ 2                                    FACTS

¶ 3      On November 13, 2014, the bank filed a complaint to foreclose a mortgage secured by Barrera's home under the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1101 *et seq.* (West 2014)). The complaint alleged that Barrera had defaulted on his mortgage loan by failing to make payments for April 1, 2014, and thereafter.

¶ 4      Barrera filed an affirmative defense and counterclaim, claiming that he contacted the bank's mortgage servicer, Specialized Loan Servicing (SLS), and was told that he needed to pay $6658.45 by August 6, 2014, to avoid foreclosure. He was given three options for payment, one of which included wiring the money through Western Union. He alleged that, based on that information, he went to Western Union the same day and tendered $6600 to the teller with directions to forward the money to SLS. As an exhibit to his affirmative defense, Barrera attached copies of Western Union receipts, which showed that he deposited the money with Western Union at 3:09 p.m. on August 6, 2014. He also attached a copy of a letter he received from SLS on August 4, 2016, indicating that he was in default. That letter stated that SLS had received a Western Union payment in the amount of $5000 on August 8, 2014, and another payment of $1660 on August 12, 2014, but claimed that the payments were late and insufficient because foreclosure proceedings had already been initiated.

¶ 5      Barrera also filed a counterclaim under the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2014)). In his counterclaim, Barrera averred that he called SLS shortly after making the payments on August 6, 2014, and was informed that SLS could only take maximum payments of $5000. As a result, Barrera paid Western Union an additional service fee of $10 at 3:46 p.m. to send the sum of $5000 to SLS. He then paid another service fee at 3:49 p.m. to send a second payment of $1660. Barrera attached copies of the Western Union receipts for each payment. Barrera made both of these payments on August 6, 2014.

- 2 -

¶ 6    The parties filed cross-motions for summary judgment. In support of its motion for summary judgment, the bank submitted a foreclosure affidavit of amounts due and owing pursuant to Illinois Supreme Court Rule 113 (eff. May 1, 2013) with supporting documentation. Neither the affidavit nor the supporting documents indicate when SLS received the payments that Barrera made through Western Union on August 6, 2014.

¶ 7    Barrera did not initially submit a counteraffidavit responding to the bank's affidavit. Nor did he initially submit a Rule 191(a) (Ill. S. Ct. 191 (eff. Jan. 4, 2013)) affidavit in support of his own motion for summary judgment. After the bank argued that its motion should be granted and Barrera's motion should be denied on that basis, Barrera attached a "certification" to his reply brief in which he attested that he was competent to testify that, "to the best of [his] knowledge, information, and belief," the allegations set forth in his amended counterclaim and amended affirmative defenses were "true and accurate."

¶ 8    The trial court heard oral argument on the parties' cross-motions for summary judgment on January 12, 2018, and March 9, 2018. During the January 12, 2018, oral argument, the bank's attorney agreed that Barrera "transmit[ed]" and "sent" the two payments totaling $6600 on August 6, 2014, and that Barrera thereby "did what he was supposed [to do]." However, the Bank's attorney noted that "[the bank's] issue is receipt." As the bank's attorney put it, "we admit that the two small payments were *** definitely made by Mr. Barrera on August 6 [2014], that he sent them then." However, the bank's counsel asserted that the two payments were not received by the bank until August 8 and August 14, 2014, respectively and "[t]here is a question as to whether the lump sum payment [*i.e.*, the initial $6600 payment that Barrera made via a single wire transfer from the Western Union Office on August 6, 2014] ever got there."

¶ 9    The bank asked for an opportunity to "present a counteraffidavit" in response to Barrera's certification of his pleadings "or at least a verification of the bank's denials in [its] pleadings" in order to avoid the possibility that some statement in Barrera's verified pleading would be deemed admitted by the bank. The trial court granted the bank's request, and the bank's attorney responded, "Okay. That's all. We will file a counter affidavit to this certification/verification of pleadings by the next court date such that these things aren't just deemed admitted."

¶ 10    However, the bank never submitted a counteraffidavit in response to Barrera's certification. Instead, it filed a motion to strike Barrera's certification on the grounds that it did not comply with the requirements governing summary judgment affidavits prescribed by Rule 191(a), including the requirement that all such affidavits be made on the affiant's personal knowledge. The bank argued, *inter alia*, that Barrera lacked sufficient personal knowledge to attest to the facts he purported to verify, such as when SLS received the finds from Western Union.

¶ 11    Two days before the continuation of oral argument on March 9, 2018, Barrera's counsel filed documents that he claimed were copies of Western Union records he received in response to a subpoena he had served upon Western Union. Those documents appear to show that, on August 6, 2014, Western Union sent the $5000 and $1600 amounts it had received from Barrera to "Specialized Loan Servicing" at the address listed on SLS's letterhead. The records show that Western Union sent these payments on August 6, 2014, at 4:47 p.m. and 4:51 p.m., respectively. The bank's counsel did not object to the admission of these documents.

¶ 12    During the March 9, 2018, hearing, Barrera's counsel stated that he did not know when SLS received the payments that Barrera sent on August 6, 2014, and that "there is absolutely

no evidence in the record as to when SLS received these funds." Barrera's counsel noted that the bank had presented no sworn testimony or other admissible evidence that SLS received those funds after August 6, 2014.

¶ 13 The bank relied upon the letter that SLS sent to Barrera on August 4, 2016. In that letter, SLS stated that it had received Barrera's $5000 payment from Western Union on August 8, 2014, and another payment of $1660 on August 14, 2014. SLS claimed that these payments were late and insufficient. The bank argued that, because Barrera had attached SLS's August 4, 2016, letter as an exhibit to its amended pleading, which Barrera later verified by certification, the assertions made by SLS in the letter should be deemed admitted by Barrera.

¶ 14 The trial court granted Barrera's motion for summary judgment and denied the bank's motion for summary judgment. In support of its ruling, the trial court found (1) that Western Union was one of the acceptable means of payment offered by SLS and Barrera did everything the bank and SLS directed him to do in order to reinstate his mortgage and (2) that the bank had presented "no sworn testimony as to when SLS received [Barrera's] reinstatement funds."

¶ 15 Thereafter, the bank filed a motion to reconsider the judgment. In denying the bank's motion, the trial court further found that (1) the reinstatement funds were tendered to SLS on August 6, 2014, but not accepted and (2) SLS's August 4, 2016, letter to Barrera, which was attached as an exhibit to Barrera's amended counterclaim, is "not competent evidence" to establish the bank's claim that it did not receive the funds until after August 6, 2014.

¶ 16 The trial court subsequently entered judgment in favor of Barrera and against the bank. The court did not award Barrera damages on his counterclaim. However, it awarded Barrera reasonable attorney fees and expenses in the amount of $24,964.55 as the prevailing party under the Mortgage Foreclosure Law.

¶ 17                                                       ANALYSIS

¶ 18 On appeal, the bank argues that the trial court erred in granting summary judgment to Barrera and in denying summary judgment to the bank. In the alternative, the bank maintains that, at a minimum, there was a dispute of material fact sufficient to preclude summary judgment for either party.

¶ 19 Summary judgment should be granted when the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2014). "The purpose of summary judgment is not to try an issue of fact but to determine whether one exists." *Monson v. City of Danville*, 2018 IL 122486, ¶ 12. In ruling on a motion for summary judgment, the trial court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the nonmovant. *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 22. If the plaintiff fails to establish any element of his or her claim, summary judgment for the defendant is appropriate. *Pyne v. Witmer*, 129 Ill. 2d 351, 358, (1989); *Marquette Bank v. Heartland Bank & Trust Co.*, 2015 IL App (1st) 142627, ¶ 10. We review a trial court's summary judgment ruling *de novo. Monson*, 2018 IL 122486, ¶ 12; *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 20 In this case, the trial court did not err in granting summary judgment for Barrera and in denying summary judgment for the bank. Because the "mailbox rule" does not apply in

mortgage foreclosure actions, the dispositive question in this case is when the bank received Barrera's mortgage payment. See 12 C.F.R. § 1026.36(c)(1)(i) (2020) (providing that "no servicer shall fail to credit a periodic payment to the consumer's loan account as of *the date of receipt* (emphasis added)).[1] The bank argues that, because it submitted copies of the mortgage and note along with affidavits evidencing Barrera's default and the amount owed, the burden shifted to Barrera to prove payment or to establish a defense to the foreclosure. The bank maintains that Barrera failed to meet this burden because (1) Barrera's purported "certification" did not constitute an admissible affidavit under Rule 191(a), (2) Barrera's counsel admitted during oral argument that he did not know when the bank received the payments and that there was no evidence establishing the date of receipt, and (3) Barrera presented no other competent evidence establishing the date of receipt.

¶ 21 We do not find these arguments to be persuasive. Neither the bank's Rule 113 affidavit nor the documents the bank attached in support of that affidavit indicate when SLS received the payments that Barrera made through Western Union on August 6, 2014 (the date the payments were due). The bank admits that Barrera transmitted the payments to SLS via Western Union on that date. The bank's argument for foreclosure is predicated entirely upon its assertion that it did not *receive* the payments on that date. However, the bank submitted no sworn evidence or testimony in support of that assertion. Accordingly, there is some question whether, under the circumstances of this case, the bank's Rule 113 affidavit was sufficient to shift the burden to Barrera to prove payment.[2] In order to satisfy its initial burden of production on summary judgment, the bank had to present evidence that, if uncontradicted, would entitle it to a directed verdict at trial. *Triple R Development, LLC v. Golfview Apartments I, L.P.*, 2012 IL App (4th) 100956, ¶ 16. Because its Rule 113 affidavit did not indicate when the bank received Barrera's August 6, 2014, payment, the bank would not have been entitled to a directed verdict on that issue based upon its affidavit.

¶ 22 Regardless, even assuming *arguendo* that the burden to produce evidence of timely payment shifted to Barrera, Barrera satisfied that burden. Barrera submitted Western Union records showing that, on August 6, 2014, Western Union transmitted the $5000 and $1600 amounts it had received from Barrera to "Specialized Loan Servicing" at the address listed on

---

[1]12 C.F.R. § 1026.36(c)(1) (2020) is a federal regulation implementing the federal Truth in Lending Act (TILA) (15 U.S.C. § 1601 *et seq.* (2018)). TILA and its implementing regulations apply in Illinois mortgage foreclosure actions. See, *e.g.*, *CitiMortgage, Inc. v. Bukowski*, 2015 IL App (1st) 140780, ¶ 20.

[2]The bank's affidavit included all of the information required by Rule 113(c)(2). However, paragraph (c)(3) of the rule provides that "[t]he affidavit shall contain any additional evidence, as may be necessary, in connection with the party's right to enforce the instrument of indebtedness." Ill. S. Ct. R. 113(c)(3) (eff. May 1, 2013). Here, the bank's argument for foreclosure depended upon proof of the date the bank received a payment that was wired to its servicer on the due date (a fact entirely within the bank's knowledge). Under these circumstances, it would seem logical to conclude that Rule 113(c)(3) required the bank's affidavit to include a sworn statement or some other evidence that it received the payment after the due date. Because the bank failed to provide such evidence in its Rule 113 affidavit, the affidavit was arguably insufficient to shift the burden to Barrera. However, we do not need to decide this question here.

SLS's letterhead.[3] Proof of the electronic transmission of funds to a servicer on a particular date supports a reasonable inference that the servicer received the funds on that date. There is no evidence that the electronic transfer to SLS was unsuccessful or that the transmission was not completed until after August 6, 2014. In addition, Barrera submitted Western Union receipts showing that, on August 6, 2014, he paid Western Union to wire the documents to SLS. Further, although the bank contested the date it received the payments, its counsel admitted during argument that Barrera "transmit[ted]" the two payments totaling $6600 on August 6, 2014, that Barrera "did what he was supposed [to do]," and that the two payments "were *** definitely made by Mr. Barrera on August 6[, 2014]."

¶ 23    Under the circumstances presented in this case, the evidence presented by Barrera, coupled with the bank's admissions, was sufficient to shift the burden back to the bank to establish the date of receipt. Because the bank failed to produce any such evidence, the trial court properly rejected the bank's motion for summary judgment.[4]

¶ 24    Further, the trial court appropriately granted Barrera's motion for summary judgment. As the defendant, Barrera could satisfy his initial burden of production on summary judgment by showing that there is an absence of evidence to support the plaintiff's case. *Performance Food Group Co. v. ARBA Care Center of Bloomington, LLC*, 2017 IL App (3d) 160348, ¶ 18; *Triple R Development*, 2012 IL App (4th) 100956, ¶ 16; *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 43. If Barrera satisfied his initial burden of production in the summary judgment proceeding, the burden of production would shift to the bank to present evidence to establish that there are genuine issues of material fact and/or that Barrera was not entitled to judgment as a matter of law. *Performance Food Group Co.*, 2017 IL App (3d) 160348, ¶ 18; *Triple R Development*, 2012 IL App (4th) 100956, ¶¶ 12, 16. At that point, the bank could not rely solely upon argument or its pleadings to raise an issue of material fact. *Performance Food Group Co.*, 2017 IL App (3d) 160348, ¶ 18; *Triple R Development*, 2012 IL App (4th) 100956, ¶¶ 12, 16.

¶ 25    Here, Barrera showed that the bank failed to present evidence, either in its Rule 113 affidavit or by other means, suggesting that it received the payments after August 6, 2014. The burden therefore shifted to the bank to present evidence of the date of receipt. The bank failed to do so, despite the fact that it requested and was granted an opportunity to present a counteraffidavit in opposition to the evidence presented by Barrera. The evidence showed that

---

[3]Although the bank argues on appeal that these documents may not be considered because they were hearsay and were not authenticated, the bank did not raise these arguments below or otherwise object to their admission before the trial court. The bank has therefore forfeited these arguments. See *McKinney v. Castleman*, 2012 IL App (4th) 110098, ¶ 21; *Centro Medico Panamericano, Ltd. v. Benefits Management Group, Inc.*, 2016 IL App (1st) 151081, ¶ 27; *People v. Wesley*, 382 Ill. App. 3d 588, 593 (2008).

[4]We reject the bank's claim that Barrera's counsel's statements during the summary judgment hearing that he did not know when SLS received the payments and that there was no evidence in the record establishing the date of receipt were binding judicial admissions entitling the bank to summary judgment. When read in context, Barrera's counsel was suggesting that the *bank* had presented no evidence of the date of receipt. In any event, as noted above, Barrera presented documentary evidence supporting a reasonable inference that the funds were received by the bank on August 6, 2014. Because the bank failed to produce any evidence to the contrary and because the bank admitted that the payments were transmitted to SLS on August 6, 2014, it cannot obtain summary judgment.

Barrera did exactly what SLS told him to do in order to keep his mortgage loan current by transmitting the payments to SLS on the due date. There was no competent evidence suggesting that the funds were received after that date. Accordingly, the trial court properly granted summary judgment in Barrera's favor.

¶ 26        All of the bank's remaining arguments in opposition to summary judgment fail. The bank argues that Barrera admitted the allegations contained in the bank's foreclosure affidavit by failing to file a counteraffidavit that complied with Rule 191. It contends that Barrera's certification of his amended counterclaim and amended affirmative defenses did not meet the requirements of a Rule 191 affidavit. However, even assuming *arguendo* that the bank is correct on this point, it would make no difference. Given the undisputed evidence that the payments were electronically transmitted on the due date and given the absence of any competent evidence that the bank received the payments after that date, Barrera was not required to submit any further evidence to obtain summary judgment. In any event, after the bank learned that the trial court was treating Barrera's certification as a Rule 191 affidavit, the Bank never filed a counteraffidavit, despite the fact that the bank's lawyer sought and was granted leave to do so and promised to do so.

¶ 27        Moreover, contrary to the bank's argument, SLS's August 4, 2016, letter is not competent evidence that the bank received the payments after August 6, 2014. Although SLS's August 4, 2016, letter to Barrera states that SLS received the payments after August 6, 2014, the letter is unsworn and was never presented into evidence by the bank. Further, contrary to the bank's argument, the contents of the letter cannot be deemed admitted by Barrera. Barrera attached SLS's letter to his pleading merely to show that SLS and the bank rejected his payments. Barrera's "certification" of his pleading merely verified that fact, not the assertions that SLS made in the letter. Indeed, as the bank correctly notes, Barrera could not have verified those assertions based on his personal knowledge. Any attempt to do so would have violated Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013) (requiring that "[a]ffidavits in support of and in opposition to a motion for summary judgment under section 2-1005 of the Code of Civil Procedure *** shall be made on the personal knowledge of the affiants"). Accordingly, the letter did not constitute evidence sufficient to justify summary judgment for the bank or to forestall summary judgment for Barrera.

¶ 28        For all the above reasons, summary judgment for Barrera was proper.

¶ 29        Barrera raises several additional arguments of his own, which we will address briefly. Barrera argues that we should dismiss the bank's appeal because the bank failed to raise a "justiciable issue" before the circuit court. Barrera maintains that, because the bank admitted that it does not do business in Rockdale, Illinois (where the residential property at issue is located), it cannot file a claim to foreclose a mortgage on the property. Barrera cited no authority in support of this claim before the circuit court or on appeal. Accordingly, the argument is forfeited. *Ameritech Services, Inc. v. Illinois Workers' Compensation Comm'n*, 389 Ill. App. 3d 191, 208 (2009) (noting that arguments on appeal are forfeited in the absence of supporting legal authority). Regardless, even if we were to address Barrera's argument, we would reject it. Mortgage foreclosure actions must be brought in the county in which the real estate "is situated." 735 ILCS 5/2-103(b) (West 2014). Here, the property at issue is situated in Will County, and the bank filed its foreclosure action in the circuit court Will County. Both parties appeared in the action, so there is no question that the Will County circuit court had

personal jurisdiction over the parties. Nor is there any question that the court had subject-matter jurisdiction over foreclosure actions. Thus, the bank presented a justiciable claim.

¶ 30 In addition, Barrera argues that the trial court erred by failing to award him damages on his amended counterclaim and asks us to remand the matter to the trial court for a hearing on damages relating to that claim. We have no jurisdiction to address this argument because Barrera failed to file a cross-appeal on this issue as required by Illinois Supreme Court Rule 303(a)(3) (eff. July 1, 2017). A notice of cross-appeal is mandatory and jurisdictional. *Greco v. Coleman*, 176 Ill. App. 3d 494, 400 (1988). In the absence of a cross-appeal, the appellate court may address and decide only the issues raised by the appellant. *Id.* at 401.

¶ 31 Finally, Barrera asks this court to remand the matter so that he may petition the trial court to supplement its award of costs and attorney fees under section 15-1510(a) of the Mortgage Foreclosure Law (735 ILCS 5/15-1510(a) (West 2014)) by awarding him reasonable costs and attorney fees incurred on appeal. Section 15-1510(a) authorizes the award of reasonable attorney fees to a party that prevails in a foreclosure action or in a motion presented in such an action. *Id.* On Barrera's motion, the trial court awarded him $24,964.55 pursuant to section 15-1510(a), but that award did not include reasonable costs and attorney fees incurred on appeal. We therefore remand the matter to the trial court so Barrera may file a motion to supplement the trial court's award of costs and fees. The circuit court is free to grant or deny any such motion in the exercise of its discretion.

¶ 32                                         CONCLUSION

¶ 33 For the foregoing reasons, the judgment of the circuit court of Will County is affirmed. The cause is remanded to the circuit court for a hearing on whether Barrera is entitled to additional attorney fees incurred on appeal pursuant to section 15-1510(a) of the Mortgage Foreclosure Law and for the award of any such fees if the trial court deems it appropriate.

¶ 34 Affirmed; cause remanded.