2020 IL App (3d) 180419

Opinion filed December 7, 2020

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee for Home Equity Mortgage Loan Asset-Backed Trust, Series INABS 2005-B, Home Equity Mortgage Loan Asset-Backed Certificates, Series INABS 2005-B, | ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois,<br><br>Appeal No. 3-18-0419<br>Circuit No. 14-CH-2464 |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Honorable Mark Thomas Carney, Judge Presiding. |
| TORIBIO BARRERA, a/k/a Toribio Barrera-Vieyra, a/k/a Toribo Barrera; ERIKA BARRERA; UNKNOWN OWNERS; and NONRECORD CLAIMANTS. | ) ) ) ) ) | |
| Defendants-Appellees. | ) | |

JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Presiding Justice Lytton and Justice Carter concurred in the judgment and opinion.

**OPINION**

¶ 1     The plaintiff, Deutsche Bank National Trust Co., filed a residential mortgage foreclosure action against defendant Toribio Barrera (Barrera). Barrera claimed that he tendered a timely payment to the bank sufficient to make the loan current before the bank initiated foreclosure

proceedings. The parties filed cross-motions for summary judgment. The trial court granted Barrera's motion and denied the bank's motion. The bank appeals the trial court's judgment.

¶ 2                                          FACTS

¶ 3        On November 13, 2014, the bank filed a complaint to foreclose a mortgage secured by Barrera's home under the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1101 *et seq.* (West 2014)). The complaint alleged that Barrera had defaulted on his mortgage loan by failing to make payments for April 1, 2014 and thereafter.

¶ 4        Barrera filed an affirmative defense and counterclaim, claiming that he contacted the bank's mortgage servicer, Specialized Loan Servicing (SLS), and was told that he needed to pay $6658.45 by August 6, 2014, to avoid foreclosure. He was given three options for payment, one of which included wiring the money through Western Union. He alleged that, based on that information, he went to Western Union the same day and tendered $6600 to the teller with directions to forward the money to SLS. As an exhibit to his affirmative defense, Barrera attached copies of Western Union receipts, which showed that he deposited the money with Western Union at 3:09 p.m. on August 6, 2014. He also attached a copy of a letter he received from SLS on August 4, 2016 indicating that he was in default. That letter stated that SLS received a Western Union payment in the amount of $5000 on August 8, 2014, and another payment of $1660 on August 12, 2014, but claimed that the payments were late and insufficient because foreclosure proceedings had already been initiated.

¶ 5        Barrera also filed a counterclaim under the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2014)). In his counterclaim, Barrera averred that he called SLS shortly after making the payments on August 6, 2014, and was informed that SLS could only take maximum payments of $5000. As a result, Barrera paid Western

Union an additional service fee of $10 at 3:46 p.m. to send the sum of $5000 to SLS. He then paid another service fee at 3:49 p.m. to send a second payment of $1660. Barrera attached copies of the Western Union receipts for each payment. Barrera made both of these payments on August 6, 2014.

¶ 6 The parties filed cross-motions for summary judgment. In support of its motion for summary judgment, the bank submitted a foreclosure affidavit of amounts due and owing pursuant to Illinois Supreme Court Rule 113 (eff. May 1, 2013) with supporting documentation. Neither the affidavit nor the supporting documents indicate when SLS received the payments that Barrera made through Western Union on August 6, 2014.

¶ 7 Barrera did not initially submit a counteraffidavit responding to the bank's affidavit. Nor did he initially submit a Rule 191(a) (Ill. S. Ct. 191 (eff. Jan. 4, 2013)) affidavit in support of his own motion for summary judgment. After the bank argued that its motion should be granted and Barrera's motion should be denied on that basis, Barrera attached a "certification" to his reply brief in which he attested that he was competent to testify that, "to the best of [his] knowledge, information, and belief," the allegations set forth in his amended counterclaim and amended affirmative defenses were "true and accurate."

¶ 8 During oral argument before the trial court, the bank's attorney agreed that Barrera "transmit[ed]" and "sent" the two payments totaling $6600 on August 6, 2014, and that Barrera thereby "did what he was supposed [to do]." However, the Bank's attorney noted that "[the bank's] issue is receipt." As the bank's attorney put it, "we admit that the two small payments were *** definitely made by Mr. Barrera on August 6 [2014], that he sent them then." However, the bank's counsel asserted that the two payments were not received by the bank until August 8 and August 14, 2014, respectively and "[t]here is a question as to whether the lump sum payment [*i.e.*, the

3

initial $6600 payment that Barrera made via a single wire transfer from the Western Union Office on August 6, 2014] ever got there."

¶ 9     The bank asked for an opportunity to "present a counteraffidavit" in response to Barrera's certification of his pleadings "or at least a verification of the bank's denials in [its] pleadings" in order to avoid the possibility that some statement in Barrera's verified pleading would be deemed admitted by the bank. The trial court granted the bank's request, and the bank's attorney responded, "Okay. That's all. We will file a counter affidavit to this certification/verification of pleadings by the next court date such that these things aren't just deemed admitted."

¶ 10     However, the bank never submitted a counteraffidavit in response to Barrera's certification. Instead, it filed a motion to strike Barrera's certification on the grounds that it did not comply with the requirements governing summary judgment affidavits prescribed by Rule 191(a), including the requirement that all such affidavits be made on the affiant's personal knowledge. The bank argued, *inter alia*, that Barrera lacked sufficient personal knowledge to attest to the facts he purported to verify, such as when SLS received the finds from Western Union.

¶ 11     During oral argument on the bank's motion to strike Barrera's certification, Barrera's counsel stated that he did not know when SLS received the payments that Barrera sent on August 6, 2014, and that "there is absolutely no evidence in the record as to when SLS received these funds." Barrera's counsel noted that the bank had presented no sworn testimony or other admissible evidence that SLS received those finds after August 6, 2014.

¶ 12     The bank relied upon the letter that SLS sent to Barrera on August 4, 2016. In that letter, SLS stated that it had received Barrera's $5000 payment from Western Union on August 8, 2014, and another payment of $1660 on August 14, 2014. SLS claimed that these payments were late and insufficient. The bank argued that, because Barrera had attached SLS's August 4, 2016, letter

4

as an exhibit to its amended pleading, which Barrera later verified by certification, the assertions made by SLS in the letter should be deemed admitted by Barrera.

¶ 13　　　　The trial court granted Barrera's motion for summary judgment and denied the bank's motion for summary judgment. In support of its ruling, the trial court found that (1) Western Union was one of the acceptable means of payment offered by SLS and Barrera did everything the bank and SLS directed him to do in order to reinstate his mortgage and (2) that the bank had presented "no sworn testimony as to when SLS received [Barrera's] reinstatement funds."

¶ 14　　　　Thereafter, the bank filed a motion to reconsider the judgment. In denying the bank's motion, the trial court further found that (1) the reinstatement funds were tendered to SLS on August 6, 2014, but not accepted and (2) SLS's August 4, 2016, letter to Barrera, which was attached as an exhibit to Barrera's amended counterclaim, is "not competent evidence" to establish the bank's claim that it did not receive the funds until after August 6, 2014.

¶ 15　　　　The trial court subsequently entered judgment in favor of Barrera and against the bank. The court did not award Barrera damages on his counterclaim. However, it awarded Barrera reasonable attorney fees and expenses in the amount of $24,964.55 as the prevailing party under the Mortgage Foreclosure Law.

¶ 16　　　　　　　　　　　　　　　　　ANALYSIS

¶ 17　　　　On appeal, the bank argues that the trial court erred in granting summary judgment to Barrera and in denying summary judgment to the bank. In the alternative, the bank maintains that, at a minimum, there was a dispute of material fact sufficient to preclude summary judgment for either party.

¶ 18　　　　Summary judgment should be granted when the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

5

and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2014). "The purpose of summary judgment is not to try an issue of fact but to determine whether one exists." *Monson v. City of Danville*, 2018 IL 122486, ¶ 12. Summary judgment is a drastic means of disposing of litigation and should only be allowed when the right of the movant is clear and free from doubt. *Id.* In ruling on a motion for summary judgment, the trial court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent. *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 22. "On appeal from an order granting summary judgment, a reviewing court must consider whether the existence of a genuine issue of material fact should have precluded dismissal or, absent such an issue of fact, whether summary judgment is proper as a matter of law." *Monson*, 2018 IL 122486, ¶ 12. We review a trial court's summary judgment ruling *de novo*. *Id.*; *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 19       In this case, the trial court did not err in granting summary judgment for Barrera and in denying summary judgment for the bank. As noted, summary judgment may be granted where the "pleadings, depositions, and *admissions on file*, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Emphasis added.) 735 ILCS 5/2-1005(c) (West 2014). Here, the bank admitted the dispositive issue, *i.e.*, that SLS had received Barrera's $6600 payment on August 6, 2014, by failing to adequately deny Barrera's allegation to that effect in its pleadings. In paragraph 6 of his amended affirmative defenses, which he later certified under penalty of perjury, Barrera alleged that that SLS had received Barrera's $6600 payment on August 6, 2014. In its response to Barrera's amended affirmative defenses, the Bank answered paragraph 6 by stating that it "lack[ed]

6

sufficient information to admit or deny" the allegations in that paragraph "in whole or in part." Section 2-610 of the Code requires pleadings to be specific and provides that

> "[e]very allegation, except allegations of damages, not explicitly denied is admitted, unless the party states in his or her pleading that he or she has no knowledge thereof sufficient to form a belief, and attaches an affidavit of the truth of the statement of want of knowledge, or unless the party has had no opportunity to deny." 735 ILCS 5/2-610(b) (West 2014).

The bank did not state that it "had no knowledge sufficient to form a belief" as to whether SLS received Barrera's reinstatement payments on August 6, 2014. Nor did it submit an affidavit attesting to the truth of its claim to lack such knowledge. The bank had ample opportunity to deny Barrera's allegation in the manner required by section 2-610 of the Code but failed to do so. Accordingly, the statement in Barrera's pleading that SLS received the payments on August 6, 2014, is deemed admitted by the Bank.

¶ 20        All of the bank's arguments in opposition to summary judgment fail. The bank argues that Barrera admitted the allegations contained in the bank's foreclosure affidavit by failing to file a counteraffidavit that complied with Rule 191. It contends that Barrera's certification of his amended counterclaim and amended affirmative defenses did not meet the requirements of a Rule 191 affidavit. However, even assuming *arguendo* that the bank is correct on this point, it would make no difference. Given the bank's admission of the dispositive fact, Barrera was not required to file a Rule 191 affidavit or counteraffidavit to obtain summary judgment against it.

¶ 21        Moreover, there is no sworn evidence in the record suggesting that SLS received Barrera's payments after August 6, 2014. Although SLS's August 4, 2016, letter to Barrera states that SLS received the payments after August 6, 2014, the letter is unsworn and was never presented into

7

evidence by the bank. Thus, the bank did not present any evidence sufficient to justify summary judgment for the bank or to forestall summary judgment for Barrera.

¶ 22   Further, contrary to the bank's argument, the contents of SLS's August 4, 2016, letter cannot be deemed admitted by Barrera. Barrera attached SLS's letter to his pleading merely to show that SLS and the bank rejected his payments. Barrera's certification of his pleading merely verified that fact, not the assertions that SLS made in the letter. Indeed, Barrera could not have verified those assertions based on his personal knowledge. Any attempt to do so would have violated Illinois Supreme Court Rule 191(a) (eff. Jan 4, 2013) (requiring that "[a]ffidavits in support of and in opposition to a motion for summary judgment under section 2-1005 of the Code of Civil Procedure *** shall be made on the personal knowledge of the affiants").

¶ 23   Moreover, after the bank learned that the trial court was treating Barrera's certification as a Rule 191 affidavit, the Bank never filed a counteraffidavit, despite the fact that the bank's lawyer sought and was granted leave to do so and promised to do so.

¶ 24   For all the above reasons, summary judgment for Barrera was proper.

¶ 25   Barrera raises several arguments of his own, which we will address briefly. Barrera argues that we should dismiss the bank's appeal because the bank failed to raise a "justiciable issue" before the circuit court. Barrera maintains that, because the bank admitted that it does not do business in Rockdale, Illinois (where the residential property at issue is located), it cannot file a claim to foreclose a mortgage on the property. Barrera cited no authority in support of this claim before the circuit court or on appeal. Accordingly, the argument is forfeited. *Ameritech Services, Inc. v. Illinois Workers' Compensation Comm'n*, 389 Ill. App. 3d 191, 208 (2009) (noting that arguments on appeal are forfeited in the absence of supporting legal authority). Regardless, even if we were to address Barrera's argument, we would reject it. Mortgage foreclosure actions must

be brought in the county in which the real estate "is situated." 735 ILCS 5/2-103(b) (West 2014). Here, the property at issue is situated in Will County, and the bank filed its foreclosure action in the circuit court Will County. Both parties appeared in the action, so there is no question that the Will County circuit court had personal jurisdiction over the parties. Nor is there any question that the court had subject-matter jurisdiction over foreclosure actions. Thus, the bank presented a justiciable claim.

¶ 26    In addition, Barrera argues that the trial court erred by failing to award him damages on his amended counterclaim and asks us to remand the matter to the trial court for a hearing on damages relating to that claim. We have no jurisdiction to address this argument because Barrera failed to file a cross-appeal on this issue as required by Illinois Supreme Court Rule 303(a)(3) (eff. July 1, 2017). A notice of cross-appeal is mandatory and jurisdictional. *Greco v. Coleman*, 176 Ill. App. 3d 494, 400 (1988). In the absence of a cross-appeal, the appellate court may address and decide only the issues raised by the appellant. *Id.* at 401.

¶ 27    Finally, Barrera asks this court to remand the matter so that he may petition the trial court to supplement its award of costs and attorney fees under section 15-1510(a) of the Mortgage Foreclosure Law (735 ILCS 5/15-1510(a) (West 2014)) by awarding him reasonable costs and attorney fees incurred on appeal. Section 15-1510(a) authorizes the award of reasonable attorney fees to a party that prevails in a foreclosure action or in a motion presented in such an action. *Id.* On Barrera's motion, the trial court awarded him $24,964.55 pursuant to section 15-1510(a), but that award did not include reasonable costs and attorney fees incurred on appeal. We therefore remand the matter to the trial court so Barrera may file a motion to supplement the trial court's

award of costs and fees. The circuit court is free to grant or deny any such motion in the exercise of its discretion.[1]

¶ 28                                                    CONCLUSION

¶ 29        For the foregoing reasons, the judgment of the circuit court of Will County is affirmed. The cause is remanded to the circuit court for a hearing on whether Barrera is entitled to additional attorney fees incurred on appeal pursuant to section 15-1510(a) of the Mortgage Foreclosure Law and for the award of any such fees if the trial court deems it appropriate.

¶ 30        Affirmed; cause remanded.

---

[1]Contrary to the defendant's argument, the trial court has jurisdiction to address this issue on remand, and remanding for that purpose would not modify the trial court's judgment in an impermissible manner. The trial court retains jurisdiction to award additional costs and attorney fees because such an award is incidental and collateral to the judgment appealed from, addresses costs and fees that were incurred after the trial court's final judgment was entered, and would not alter or affect the issues raised in this appeal. *Navistar Financial Corp. v. Curry Ice & Coal, Inc.*, 2016 IL App (4th) 150219, ¶¶ 47-50. Thus, we have the authority to remand for the trial court to consider awarding supplemental costs and fees (*McNiff v. Mazda Motor of America, Inc.*, 384 Ill. App. 3d 401, 408-09 (2008); *Melton v. Frigidaire*, 346 Ill. App. 3d 331, 339 (2004); *American Savings Ass'n v. Conrath*, 123 Ill. App. 3d 140, 147 (1984)), and the trial court has the authority to decide the issue on remand.