2021 IL App (1st) 201357-U

No. 1-20-1357

Order filed December 1, 2021

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| BARBARA CONRAD, Executrix for the Estate of Ralph Krueger, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | |
| WAUCONDA HEALTHCARE AND REHABILITATION CENTRE, LLC, an Illinois Limited Liability Company, d/b/a Wauconda Care; LANCASTER LTD., an Illinois Corporation; SYMPHONY DIAGNOSTIC SERVICES NO. 1, LLC, a California Limited Liability Company, d/b/a Mobilex USA; JAMES I. COLLINS, M.D.; and WENCES YNIEGO, R.N., | ) ) ) ) ) ) ) ) ) | Nos. 19 L 4902 20 L 10627 |
| Defendants, | ) ) | |
| (Wauconda Healthcare and Rehabilitation Centre, LLC, an Illinois Limited Company, d/b/a Wauconda Care; Lancaster Ltd., an Illinois Corporation; and Wences Yniego, R.N., Defendants-Appellees). | ) ) ) ) | Honorable Moira S. Johnson, Judge presiding. |

JUSTICE BURKE delivered the judgment of the court.
Justice McBride and Justice Ellis concurred in the judgment.

## ORDER

¶ 1    *Held*:    We reverse the circuit court's dismissal with prejudice of plaintiff's complaint against the defendants-appellees under Illinois Supreme Court Rule 103(b) (eff. July 1, 2007), where the totality of the circumstances do not show that plaintiff failed to exercise reasonable diligence to obtain service on them after the expiration of the applicable statutes of limitations.

¶ 2    After Ralph Krueger passed away at a long-term care facility, the executrix of his estate, Barbara Conrad (plaintiff), brought various wrongful death and survival claims against Wauconda Healthcare and Rehabilitation Centre, LLC (Wauconda Care), Lancaster Ltd. (Lancaster), Symphony Diagnostic Services No. 1, LLC (Symphony), Dr. James I. Collins and Wences Yniego, a registered nurse. Wauconda Care, Lancaster and Yniego filed a motion to dismiss under Illinois Supreme Court Rule 103(b) (eff. July 1, 2007), arguing that plaintiff failed to exercise reasonable diligence in serving them. The circuit court agreed and granted their motion to dismiss with prejudice.

¶ 3    Plaintiff now appeals that dismissal order, contending that the circuit court erred in considering her activities before the applicable statutes of limitations had expired and where the circumstances of her actions did not warrant dismissal with prejudice under Rule 103(b). For the reasons that follow, we reverse the circuit court's order granting Wauconda Care, Lancaster and Yniego's motion to dismiss with prejudice and remand the cause for further proceedings consistent with this order.

¶ 4                                   I. BACKGROUND

¶ 5                          A. History and Plaintiff's Complaint

¶ 6    Lancaster owned Wauconda Care, a long-term care facility located in Wauconda. Krueger had been hospitalized in late February and early March 2018, during which he had a feeding tube inserted into his stomach. The hospital discharged Krueger on March 6, 2018, and Wauconda Care, where Yniego was a supervising nurse, admitted him later that day. The next day, Krueger's feeding tube became dislodged, and he needed the tube to be reinserted inside his stomach. After a Wauconda Care staff member reinserted the tube, someone ordered an x-ray of Krueger's abdomen to verify the proper placement of the tube. Dr. Collins, who the complaint alleged was an agent of Symphony, a diagnostic services company, authored a report based on that x-ray. The complaint further alleged that Dr. Collins concluded the Wauconda Care staff member properly reinserted the tube into Krueger's stomach. On March 8, 2018, Krueger experienced shortness of breath and lethargy, which required him to be transported to the hospital. Two days later, Krueger passed away as a result of septic shock and severe acute peritonitis. Shortly thereafter, a superior court in North Carolina issued letters testamentary naming Conrad the executrix of Krueger's estate.

¶ 7    In February 2019, Symphony filed for Chapter 11 bankruptcy (11 U.S.C. §§ 1101 to 1195 (2018)) in the United States Bankruptcy Court for the Southern District of New York along with Trident Holding Company, LLC (Trident), and other affiliates of Trident. Under section 362(a) of the bankruptcy code (11 U.S.C § 362(a) (2018)), an automatic stay was put in place on plaintiff's claims against Symphony.

¶ 8    Plaintiff apparently had no knowledge that Symphony had filed for bankruptcy. As a result, on May 6, 2019, she sued Symphony, Lancaster, Wauconda Care, Dr. Collins and Yniego under multiple theories of liability based on Krueger's death. As relevant to this appeal, plaintiff brought

various wrongful death and survival claims against Lancaster, Wauconda Care and Yniego (collectively, appellees).

¶ 9                                    B. Plaintiff's Service Attempts

¶ 10    The same day plaintiff filed her complaint, she caused to be issued summons to Lancaster and Wauconda Care, through their registered agent, Laurence Zung, at an address on North Pulaski Road in Chicago, and to Yniego at an apartment located in Wauconda. On May 29, 2019, a Cook County sheriff's deputy attempted to serve both companies through Zung, but in her affidavit of service, she stated that Zung was unavailable to be served due to recently having "open heart surgery." On June 25, 2019, a Lake County sheriff's deputy attempted to serve Yniego, but in his affidavit of service, he stated that Yniego could not be served because she had moved.

¶ 11    A week later, Symphony filed an appearance in the circuit court through its counsel. On July 3, 2019, the trial judge held the initial case management conference. Although there is no transcript from this conference, an associate of plaintiff's counsel submitted an affidavit during the circuit court proceedings attesting to what occurred. According to the affidavit, Symphony's counsel informed the trial judge that the company had filed for bankruptcy. In response, the trial judge "refused to take any action other than entering a stay order, including appointing a special process server, and explained that she had no authority to enter any other order given the bankruptcy proceeding." The associate of plaintiff's counsel asked the trial judge to return in 14 days, but she "denied [the associate's] request." The trial judge accordingly placed the case on the law division's bankruptcy stay calendar.

¶ 12    On July 24, 2019, plaintiff's counsel filed a motion to be admitted *pro hac vice* in the United States Bankruptcy Court for the Southern District of New York. The following month, the

bankruptcy court granted the motion.[1] In September 2019, the bankruptcy court entered an order confirming the second modified second amended joint plan of reorganization of Trident, Symphony and the remaining debtor affiliates of Trident. Within the confirmation order of the joint plan, the bankruptcy court replaced the automatic stay that had been in effect since the initiation of the bankruptcy proceedings with a plan injunction that operated in a similar manner.

¶ 13    On March 20, 2020, plaintiff filed a motion in the United States Bankruptcy Court for the Southern District of New York requesting the court enter an order modifying the automatic stay to allow her to proceed with her circuit court litigation and to pursue any applicable insurance coverage that may apply to her circuit court claims against Symphony.[2] Four days later, plaintiff re-filed the motion to correct the motion's case caption. Two days after that, Symphony filed a notice of presentment of a proposed stipulation and agreed order between it and plaintiff to modify the plan injunction and permit plaintiff to continue her proceedings in the circuit court to the extent of the available insurance proceeds. According to the notice, the parties intended to present the proposed stipulation and agreed order to the bankruptcy court on April 13, 2020.

¶ 14    On April 14, 2020, in the circuit court, plaintiff filed an emergency motion to remove the case from the law division's bankruptcy stay calendar. In the motion, plaintiff stated that she had been unable to serve Lancaster, Wauconda Care and Yniego prior to the trial judge staying her case. However, plaintiff asserted that, two weeks earlier, the United States Bankruptcy Court for the Southern District of New York entered an order lifting the automatic stay in Symphony's

---

[1] We have added facts to the background section of this order based on information we have obtained by viewing the docket in Trident and Symphony's bankruptcy case, which is a proper source of judicial notice. See *LB Steel, LLC v. Carlo Steel Corp.*, 2018 IL App (1st) 153501, ¶ 21, n. 4.

[2] Although plaintiff referenced the automatic stay, as noted, the stay had been replaced by the plan injunction at this point.

bankruptcy proceedings thereby allowing her to pursue her claims in the circuit court. Because the bankruptcy court purportedly lifted the stay, plaintiff requested that the circuit court lift its stay so that she could have a special process server appointed in order to serve appellees. In support of her emergency motion, plaintiff attached the purported order from the bankruptcy court. However, the attachment was a stipulation and agreed order pertaining to different claimants of Trident and its affiliates, not plaintiff.

¶ 15    The following day, the legal assistant to plaintiff's counsel e-mailed the law clerk to Judge James P. Flannery Jr., the presiding judge of the circuit court's law division, attaching the emergency motion to remove the case from the law division's bankruptcy stay calendar and stating that the motion had been noticed to be heard in two days. The day after, the legal assistant followed up with Judge Flannery's law clerk and asked if he could advise on the status of the hearing for the emergency motion. Judge Flannery's law clerk responded that the motion would not be heard and directed the legal assistant to a general administrative order for emergency motions. In response, plaintiff's counsel asked the law clerk whether they had improperly followed the procedures or if the type of motion was not considered an emergency. The law clerk informed plaintiff's counsel that the motion did not meet the requirements for an emergency, but he added that the case did not "need to be removed from the stay calendar for a special process server to be appointed." The law clerk told plaintiff's counsel that "[t]he motion to appoint [a] special process server should be brought before the motion judge." The law clerk added that, if all the parties agreed, the case could be removed from the stay calendar by sending him the draft order.

¶ 16    On April 17, 2020, plaintiff filed a motion for an order to appoint a special process server to serve alias summonses on Lancaster, Wauconda Care and Yniego, which Judge Allen Price Walker granted three days later. The same day Judge Walker granted plaintiff's motion, the clerk

of the circuit court issued the alias summonses to Lancaster and Wauconda Care through Zung, their registered agent, at an address on North Pulaski Road in Chicago. On April 23, 2020, the clerk of the circuit court issued the alias summons to Yniego at an address in Round Lake. That same date, plaintiff's counsel signed affidavits of compliance for service of Lancaster and Wauconda Care through the Illinois Secretary of State. According to both affidavits, plaintiff's counsel asserted that the basis of service through the Illinois Secretary of State was because Lancaster and Wauconda Care's "registered agent cannot with reasonable diligence be found at the registered office of record in Illinois." Although plaintiff's counsel signed the affidavits of compliance on April 23, 2020, the Illinois Secretary of State's office did not time stamp the affidavits as filed on this date.

¶ 17    On May 4, 2020, the United States Bankruptcy Court for the Southern District of New York entered a stipulation and agreed order between plaintiff and Symphony, whereby the bankruptcy court modified the plan injunction "for the limited purpose of allowing" plaintiff to pursue her claims against Symphony in the circuit court "for which any recovery against [Symphony] shall be limited solely to the Available Insurance Coverage." The order further stated that, "[e]xcept to the extent set forth in this Stipulation and Agreed Order, neither this Stipulation and Agreed Order, nor any actions taken pursuant hereto, shall affect [plaintiff's] right of recovery against any other tortfeasor."

¶ 18    On May 7, 2020, according to an affidavit of service, plaintiff's special process server served Yniego's husband with a copy of the complaint and the alias summons at their residence in Round Lake. The special process server also attested that he mailed a copy of both documents in a sealed envelope to Yniego at the same address. The following day, according to an affidavit of service, plaintiff's special process server served Zung's wife with a copy of the complaint and the

alias summonses for Lancaster and Wauconda Care at their residence in Burlingame, California. The special process server also attested that someone associated with her company mailed a copy of both documents in a sealed envelope to Zung at the same address.

¶ 19    In early June 2020, Lancaster, Wauconda Care and Yniego appeared through the same counsel. On June 17, 2020, the Illinois Secretary of State time stamped as filed plaintiff's counsel's affidavit of compliance for Wauconda Care. Two days later, the Illinois Secretary of State time stamped as filed plaintiff's counsel's affidavit of compliance for Lancaster.

¶ 20                          C. Appellees' Motion to Dismiss

¶ 21    In late June 2020, appellees filed a joint motion to dismiss pursuant to Illinois Supreme Court Rule 103(b) (eff. July 1, 2007). In the motion, appellees highlighted that, from July 2019 until April 14, 2020, plaintiff had made no effort to serve them. As such, they contended that she failed to exercise reasonable diligence to obtain service on them, as required by Rule 103(b). Appellees further contended that plaintiff's allegations related to the care and treatment that Krueger received at Wauconda Care from March 6 to March 8, 2018, which allegedly caused his death on March 10, 2018. Because the applicable statutes of limitations for the survival and wrongful death claims were two years, appellees asserted that the limitations periods for the case expired by March 10, 2020, when Krueger passed away. As such, appellees argued that, under Rule 103(b), the court's dismissal should be with prejudice. Appellees also contended that the automatic stay entered in Symphony's bankruptcy proceedings did not affect plaintiff's obligation to timely and diligently serve them because the automatic stay only protected the bankruptcy debtor. Additionally, they argued that plaintiff's attempts to serve them were defective. Concerning Yniego, appellees asserted that plaintiff's process server did not send a copy of the summons in a sealed envelope with prepaid postage to her, as required by Illinois law. Concerning

Lancaster and Wauconda Care, they asserted that plaintiff could not validly serve Zung, as their registered agent, by serving his wife.

¶ 22    In support of their motion, appellees attached an affidavit from Zung, who averred that he was the registered agent for Lancaster and Wauconda Care between May 2019 and May 2020. During such time, Zung stated that he split his time between a residence in Evanston and a residence in Burlingame, California. When Zung resided in Evanston, he would go to the North Pulaski Road address in Chicago—Lancaster and Wauconda Care's registered address—two or three times per week. Zung asserted that he had no knowledge of the instant lawsuit until a special process server served his wife at their residence in California. Zung averred that, at no time, did he evade or otherwise hinder any process server who may have attempted to serve him as the registered agent for Lancaster or Wauconda Care. Yniego also provided an affidavit, wherein she stated that, between May 2019 and May 2020, she was employed as a nursing supervisor at Wauconda Care and lived in Round Lake. Yniego added that she had not left the Round Lake area for any extended period of time during that year and received no information indicating that she was a defendant in the instant lawsuit. Yniego averred that, between May 2019 and May 2020, she never attempted to avoid or hinder any process server attempting to serve her.

¶ 23    In July 2020, plaintiff responded to appellees' motion and contended that it must be denied where she was unable to serve them because the trial judge stayed all litigation in the case. Plaintiff also argued that Zung did not reside in Illinois during the vast majority of the time in which Lancaster and Wauconda Care were unserved, which violated Illinois law. Furthermore, plaintiff posited that she made an initial, good-faith attempt to serve appellees immediately after she filed her complaint and continued to act with reasonable diligence to have the automatic stay lifted through her counsel's actions in the United States Bankruptcy Court for the Southern District of

New York. Lastly, plaintiff asserted that, even if the court granted appellees' motion to dismiss, such a dismissal would have to be without prejudice because the applicable statutes of limitations were tolled by the trial judge's stay order and Lancaster and Wauconda Care's failure to maintain a registered agent located in Illinois. According to plaintiff, the limitations periods for her claims against appellees still had not expired.

¶ 24 In support of her response, plaintiff attached an affidavit from her counsel, Daniel Goldfaden, wherein he averred that he learned that Yniego had not been served on July 2, 2019, when he received an affidavit of service from the Lake County Sheriff's Office. Additionally, he was never notified by the Cook County Sheriff's Office that Lancaster and Wauconda Care were not served and only learned this fact before the initial case management conference in the case on July 3, 2019. Goldfaden stated that he could not attend the initial case management conference, so he asked an associate of his to cover for him and to request that the circuit court enter an order allowing a special process server to serve Lancaster, Wauconda Care and Yniego. After the case management conference, Goldfaden learned that the circuit court had stayed the entire case.

¶ 25 Thereafter, Goldfaden asserted that he began researching the necessary steps and procedures to have the automatic stay in the bankruptcy court and the circuit court stay lifted. To this end, Goldfaden filed a motion and draft order to be admitted to the United States Bankruptcy Court for the Southern District of New York *pro hac vice*. Goldfaden further investigated various insurance issues related to Symphony and plaintiff's possible recovery against the company, including requesting Symphony's insurance policy. However, Goldfaden asserted that Symphony's counsel denied his request. Ultimately, after researching the insurance issues and being denied by Symphony's counsel, Goldfaden drafted and filed a motion and draft order to lift the bankruptcy court stay. He also worked with Symphony's counsel to enter into a stipulation to

lift the bankruptcy court stay. According to Goldfaden, once he and Symphony's counsel agreed to the language of the stipulation, the parties sought approval from the bankruptcy court. Goldfaden additionally asserted that many of his actions were delayed by his inability to "consistently reach" Symphony's counsel, Lastly, Goldfaden averred that, "[a]s of April 20, 2020, [he] erroneously believed that the [bankruptcy court] stay had been lifted." Goldfaden attached to his affidavit various motions he filed in the United States Bankruptcy Court for the Southern District of New York.

¶ 26    Plaintiff also attached an affidavit from Steven Simon, the owner of Acumen Probe LLC, an Illinois licensed private investigation agency and the special process server company in this case. Simon averred that, in February 2020, the law firm of plaintiff's counsel requested that he serve Zung as the registered agent of Lancaster and Oakbrook Healthcare Centre Ltd. in connection with two unrelated civil cases. That month, Simon attempted to serve Zung at an office located on North Pulaski Road in Chicago. Simon encountered a man named Christopher Vicere, who told him that Zung lived in the San Francisco area eight months out of the year and that Zung was expected to return to the Chicago area in mid-March. According to Simon, Vicere further stated that Lancaster's corporate secretary, Ronald Zung, lived in Singapore. Vicere also told Simon that he had "nothing to do with" Lancaster.

¶ 27    Simon stated that, in early April 2020, he called Lancaster's office pursuant to his attempts to serve Zung in the unrelated civil matters and spoke to a woman named Laura Zung. She told Simon that Laurence Zung was still in California "due to the COVID crisis" and was currently hospitalized. In light of that conversation, Simon attempted to identify another corporate officer or individual who would be authorized to accept service on behalf of Lancaster. In doing so, Simon discovered that, contrary to Vicere's earlier assertions, Vicere's LinkedIn page identified himself

as the vice president of finance for Lancaster since 1995. Additionally, Simon obtained a 2018 report filed with the Illinois Department of Healthcare and Family Services that identified Vicere as being involved with Lancaster, and Simon obtained a 2018 federal tax document that identified Vicere as the plan administrator and employer/plan sponsor for Lancaster's retirement and savings plan. Simon attached to his affidavit the purported LinkedIn page of Vicere, the Illinois Department of Healthcare and Family Services report and the 2018 federal tax document. Based upon the information Simon obtained from Vicere, Laura Zung and his own research, Simon discovered that Laurence Zung owned a condominium in Burlingame, California. From this, Simon coordinated the service of process on Zung at that condominium on May 8, 2020, in connection with the instant case.

¶ 28    In August 2020, appellees filed a reply in support of their motion to dismiss and included a supplemental affidavit from Yniego. Therein, she averred that she had not lived in Wauconda since 2010. Yniego added that, from 2010 to 2014, she lived in Vernon Hills and since 2014, she had lived in Round Lake.

¶ 29    Despite the parties having briefed appellees' motion to dismiss, the case still remained on the law division's bankruptcy stay calendar, as plaintiff had not re-filed her motion to lift the stay. In September 2020, plaintiff filed a motion to remove the case from the law division's bankruptcy stay calendar. The following month, Judge Flannery determined that the matter should be removed from the law division's bankruptcy stay calendar, and he ordered the clerk of the circuit court to renumber the cause. Judge Flannery further ordered that the case be returned to the trial judge's docket. The case was renumbered 20 L 10627 from 19 L 4902 and returned to the trial judge's docket. The parties re-submitted their briefs and set the motion to be heard by the trial judge.

¶ 30    Prior to the scheduled hearing on appellees' motion to dismiss, plaintiff filed an emergency motion for leave to file a sur-reply to their motion. The trial judge granted plaintiff's request over appellees' objection. In plaintiff's sur-reply, she posited that appellees admitted they were served in May 2020 and argued that, based on the plain language of Rule 103(b) and Illinois case law interpreting the rule, only her actions after the expiration of the applicable statutes of limitations could be considered by the trial judge in deciding their motion to dismiss. To this end, plaintiff asserted that, even if the statutes of limitations had not been tolled, there would have been a two-month gap between the expiration of the limitations periods and when appellees were served, which would not constitute the type of delay contemplated by Rule 103(b).

¶ 31                    D. Hearing on the Motion to Dismiss

¶ 32    On November 16, 2020, the trial judge held a hearing on appellees' motion to dismiss. The beginning of the hearing focused on the bankruptcy court stay and the subsequent circuit court stay. Plaintiff's counsel conceded that he filed the April 2020 motion to appoint a special process server to serve appellees under the mistaken belief that the United States Bankruptcy Court for the Southern District of New York had lifted the bankruptcy stay applicable to plaintiff's claims. In response, the trial judge observed that Judge Walker could not technically grant plaintiff's motion because the bankruptcy court stay and related circuit court stay were still in effect, resulting in his order being void. At one point, plaintiff's counsel asked the trial judge if because "the case [was] stayed in the Law Division *** we couldn't serve anybody at that time?" The trial judge responded that counsel was correct and that, "while the case is stayed, you can't get service on anybody." She noted that federal bankruptcy proceedings superseded any proceedings in the circuit court, and she entered the circuit court stay as a result of this precedence. The trial judge asserted that: "If the case is stayed, you can't enter orders. You can't go to the circuit court motion court and ask for

relief if the case is stayed." The trial judge stated that, under the circumstances, the proper procedure would be for the plaintiff to request permission from the bankruptcy court to proceed in the circuit court against the defendants not involved in the bankruptcy proceedings. The trial judge remarked that she could not expose a defendant in bankruptcy "to any claims by anybody," including codefendants because they could have crossclaims against the defendant in bankruptcy. According to the trial judge, if plaintiff would have received the requisite permission from the bankruptcy court, the circuit court stay would have been lifted as a "matter of performance."

¶ 33    The second part of the hearing focused on appellees' motion to dismiss. Plaintiff's counsel reiterated the various arguments made in plaintiff's response to the motion and counsel repeated the actions he took with respect to lifting the bankruptcy court stay immediately after the initial case management conference. In response, appellees' counsel asserted that, because the trial judge concluded that Judge Walker's order was void, none of the appellees had even been served properly. To this end, counsel observed that plaintiff filed her complaint in May 2019 and the instant hearing was occurring in mid-November 2020, meaning 18 months had passed without plaintiff effectuating proper service on the appellees. According to appellees' counsel, this delay in service in combination with the applicable two-year statutes of limitations expiring in March 2020 warranted dismissal under Rule 103(b). Appellees' counsel further noted that the stipulation and agreed order entered by the United States Bankruptcy Court for the Southern District of New York was limited to allowing plaintiff to pursue her claims against Symphony only to the extent of the available insurance coverage, and that the order did not even reference appellees. In regard to the statutes of limitations issue, plaintiff's counsel replied that the statutes of limitations should have been tolled pursuant to section 13-216 of the Code of Civil Procedure (Code) (735 ILCS 5/13-216 (West 2018)) due to Symphony's bankruptcy proceedings.

¶ 34    After hearing the parties' arguments, the trial judge stated that she was going to dismiss the action against the appellees. When plaintiff's counsel asked the trial judge whether that dismissal was with or without prejudice, she asserted that the dismissal would be with prejudice. Plaintiff's counsel followed up and asked the trial judge if she had made a determination about whether the statutes of limitations had run in the case. She responded "[n]o" and that such a determination was "not part of this." The trial judge added: "This is a 103(b) motion. I'm making a finding that there was a lack of diligence in serving the [appellees]." Plaintiff's counsel attempted to highlight the language of Rule 103(b) and when a dismissal could be made with prejudice, but the trial judge interjected and said "[i]t's with prejudice." She continued: "I don't need to put anything about the statute of limitations in there because it ran on the date that it did. I'm not making any other finding. I'm not entertaining your request in your response to the 103(b) motion, make [*sic*] a finding on whether the statute of limitations has run. It ran, obviously. *** [T]he question that you want me to entertain is not part of the 103(b) motion." The trial judge later stated that her ruling was based upon the parties' briefs and their oral arguments. In her written order, she asserted that appellees' motion to dismiss was granted with prejudice and incorporated by reference the transcript of proceedings. Additionally, the trial judge asserted that, pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), there was no just reason for delaying appeal of the dismissal order.

¶ 35    Thereafter, plaintiff appealed the trial judge's dismissal order.

¶ 36                                II. ANALYSIS

¶ 37    Plaintiff contends that the trial judge improperly granted appellees' motion to dismiss where the trial judge considered her activities before the applicable statutes of limitations expired

and where the circumstances of her actions did not warrant dismissal with prejudice under Illinois Supreme Court Rule 103(b) (eff. July 1, 2007).

¶ 38    Under Rule 103(b):

> "If the plaintiff fails to exercise reasonable diligence to obtain service on a defendant prior to the expiration of the applicable statute of limitations, the action as to that defendant may be dismissed without prejudice. If the failure to exercise reasonable diligence to obtain service on a defendant occurs after the expiration of the applicable statute of limitations, the dismissal shall be with prejudice as to that defendant only ***." *Id.*

Rule 103(b) is intended to protect a defendant from unnecessary delays in being served and to prevent the statute of limitations from being circumvented. *Segal v. Sacco*, 136 Ill. 2d 282, 286 (1990). "Dismissal of a cause with prejudice under Rule 103(b) is a harsh penalty which is justified when the delay in service of process is of a length which denies a defendant a 'fair opportunity to investigate the circumstances upon which liability against [the defendant] is predicated while the facts are accessible.' " *Id.* at 288 (quoting *Geneva Construction Co. v. Martin Transfer & Storage Co.*, 4 Ill. 2d 273, 289-90 (1954)).

¶ 39    The defendant bears the initial burden to make a *prima facie* showing that the plaintiff failed to exercise reasonable diligence to obtain service. *Mular v. Ingram*, 2015 IL App (1st) 142439, ¶ 21. Then, the burden shifts to the plaintiff to present competent evidence to show that she exercised reasonable diligence and to justify any delays that occurred in doing so. *Id.* "The standard under the rule is objective and the fact that the delay in effecting service may not have been intentional is not determinative." *Id.* "Rule 103(b) is not rooted in a subjective test of the plaintiff's intent but, rather, upon an objective evaluation of reasonable diligence in obtaining

service of process." *Penrod v. Sears, Roebuck & Co.,* 150 Ill. App. 3d 125, 129 (1986). Still, Illinois courts are cautious not to apply Rule 103(b) harshly and dismiss a cause with prejudice when the delay in service is attributed minor or inadvertent errors. *Silverberg v. Haji*, 2015 IL App (1st) 141321, ¶ 31 (citing *Segal*, 136 Ill. 2d at 288; *Licka v. William A. Sales, Ltd.*, 70 Ill. App. 3d 929, 937-38 (1979)).

¶ 40    When the circuit court considers a motion to dismiss brought under Rule 103(b), it must consider the totality of the circumstances. Ill. S. Ct. R. 103(b) (eff. July 1, 2007); *Martinez v. Erickson*, 127 Ill. 2d 112, 122 (1989). In doing so, the court should consider various factors, among them: "(1) the length of time used to obtain service of process; (2) the activities of plaintiff; (3) plaintiff's knowledge of defendant's location; (4) the ease with which defendant's whereabouts could have been ascertained; (5) actual knowledge on the part of the defendant of pendency of the action as a result of ineffective service; (6) special circumstances that would affect plaintiff's efforts; and (7) actual service on defendant." *Case v. Galesburg Cottage Hospital*, 227 Ill. 2d 207, 212-13 (2007). Rule 103(b) does not contain a temporal standard by which a court can determine whether the plaintiff's efforts to serve the defendant were reasonable, so the court must consider each case based on its own unique facts. *Id.* at 213. Ultimately, the court has discretion when ruling on a Rule 103(b) motion to dismiss, and therefore, we may not reverse its ruling absent an abuse of discretion. *Id.* An abuse of discretion occurs where the court's decision is unreasonable, arbitrary or where no reasonable person would agree with the court's ruling. *Seymour v. Collins*, 2015 IL 118432, ¶ 41. Additionally, if the court's ruling depends upon an error of law, its decision will be an abuse of discretion. *Myrick v. Union Pacific R.R. Co.*, 2017 IL App (1st) 161023, ¶ 21.

¶ 41    At the outset, appellees argue that plaintiff should not be afforded appellate review of the trial judge's dismissal order because she took inconsistent positions in the circuit court and now in

the appellate court, in particular with respect to how the federal bankruptcy stay impacted her ability to serve them. "It is fundamental to our adversarial process that a party waives his right to complain of an error where to do so is inconsistent with the position taken by the party in an earlier court proceeding." *Auton v. Logan Landfill, Inc.*, 105 Ill. 2d 537, 543, (1984). However, even if plaintiff's arguments below and on appeal are not perfectly consistent, much of her variation in arguments can be attributed to conflicting assertions between Judge Flannery's law clerk and the trial judge such that we cannot fault her for having to change her tactical strategies at various times. As such, plaintiff can properly challenge the trial judge's dismissal order.

¶ 42    Having found plaintiff can properly challenge the trial judge's dismissal order, we turn to that ruling. As highlighted by our discussion related to the principles of ruling on a Rule 103(b) motion, dismissal under the rule requires the circuit court to consider several important factors and the totality of the circumstances. See *Case*, 227 Ill. 2d at 212-13; *Martinez*, 127 Ill. 2d at 122. Even when the facts of the case warrant dismissal, the circuit court must entertain a further inquiry to determine whether that dismissal should be with or without prejudice, which necessitates a determination of when the applicable statutes of limitations expired. See Ill. S. Ct. R. 103(b) (eff. July 1, 2007). On this record, the trial judge failed to appropriately consider the totality of the circumstances and never attempted to specifically analyze any of the relevant Rule 103(b) factors. See *Silverberg*, 2015 IL App (1st) 141321, ¶¶ 35-37, 65 (reversing the circuit court's dismissal under Rule 103(b) where it abused its discretion by "not consider[ing] the totality of the circumstances in ruling on defendant's motion to dismiss as it was required to do under Rule 103(b)" and where the record revealed that the court "did not actually consider the appropriate factors when deciding defendant's motion to dismiss"). The trial judge's failure to sufficiently analyze the relevant factors would justify a reversal of the dismissal order.

¶ 43    In addition, the trial judge incorrectly determined that whether the statutes of limitations had expired in the case was "not part" of a Rule 103(b) motion. In fact, a determination about when the statutes of limitations had expired with respect to certain claims was essential under the rule for two reasons. One, as the plain language of Rule 103(b) indicates, a dismissal under the rule may be ordered with prejudice only when the plaintiff's "failure to exercise reasonable diligence to obtain service on a defendant occurs *after* the expiration of the applicable statute of limitations." (Emphasis added.) Ill. S. Ct. R. 103(b) (eff. July 1, 2007). Second, a determination about when the statutes of limitations expired frames the court's findings with respect to the plaintiff's diligence or lack thereof, namely what actions of the plaintiff the court can consider. "[I]n determining whether or not a defendant may be dismissed with prejudice under Rule 103(b), the crucial inquiry is whether or not an examination of the plaintiff's actions *following* the expiration of the statute of limitations reveals a failure to exercise reasonable diligence." (Emphasis added.) *Matthews v. Donnelly*, 265 Ill. App. 3d 1016, 1019 (1994); see also *Illinois Farmers Insurance Co. v. Makovsky*, 293 Ill. App. 3d 77, 84-85 (1997) (same); *Langford v. Sentry Insurance of Illinois, Inc.*, 193 Ill. App. 3d 386, 388 (1990) (same).

¶ 44    In each of *Matthews*, *Makovsky* and *Langford*, this court construed a version of Rule 103(b) that read:

> "If the plaintiff fails to exercise reasonable diligence to obtain service prior to the
> expiration of the applicable statute of limitations, the action as a whole or as to any
> unserved defendant may be dismissed without prejudice. If the failure to exercise
> reasonable diligence to obtain service occurs after the expiration of the applicable
> statute of limitations, the dismissal shall be with prejudice." Ill. S. Ct. R. 103(b)
> (eff. July 1, 1982).

- 19 -

However, in July 1997, a modified Rule 103(b) became effective, which stated that: "If the plaintiff fails to exercise reasonable diligence to obtain service on a defendant, the action as to that defendant may be dismissed without prejudice, with the right to refile if the statute of limitations has not run." Ill. S. Ct. R. 103(b) (eff. July 1, 1997). Under the modified rule, there was "no restriction on the court's analysis based on when the plaintiff's 'reasonable diligence,' or lack thereof, occurred, *i.e.*, before or after the expiration of the statute of limitations." *Rice v. Ford Motor Co.*, 316 Ill. App. 3d 547, 551 (2000). And thus, contrary to the *Matthews*, *Makovsky* and *Langford*, the court could "consider a plaintiff's actions from the date on which the complaint was filed to the date on which the plaintiff obtains service on the defendant for purposes of determining whether reasonable diligence has been exercised under the rule." *Id.* at 552.

¶ 45    But in July 2007, Rule 103(b) was modified yet again to its current form, which reads almost identically to the version effective from July 1982 until July 1997 and the version our courts interpreted in *Matthews*, *Makovsky* and *Langford*. To this end, and consistent with *Matthews*, *Makovsky* and *Langford*, in analyzing appellees' Rule 103(b) motion to dismiss, the trial judge could only consider plaintiff's activities following the expiration of the applicable statutes of limitations to dismiss her complaint against appellees with prejudice.

¶ 46    As previously discussed, when the trial judge made her ruling on appellees' motion to dismiss, she stated that a determination about whether the statutes of limitations had expired was "not part" of a Rule 103(b) motion. Yet the trial judge then asserted that she did not "need to put anything" on the record or in a written order "about the statute of limitations *** because it ran on the date that it did." She concluded her point by stating that it was "not making any other finding. I'm not entertaining your request in your response to the 103(b) motion, make [*sic*] a finding on whether the statute of limitations has run. It ran, obviously. *** [T]he question that you want me

to entertain is not part of the 103(b) motion." On the one hand, it appears that the trial judge believed that a determination of when the statutes of limitations expired was not an essential part of a Rule 103(b) analysis. On the other hand, she did state that the statutes of limitations had "obviously" expired, though at an unspecified time. Because the time when the limitations expired was critical to a Rule 103(b) analysis and the trial judge did not believe such a finding was critical to such an analysis, her failure in this regard would justify a reversal of the dismissal order. See *Myrick*, 2017 IL App (1st) 161023, ¶ 21 (the circuit court abuses its discretion when its exercise of discretion rests upon an incorrect view of the law).

¶ 47    In light of the foregoing, determining when the applicable statutes of limitations expired and necessarily when they began to run was critical to this case. Given the trial judge's incorrect view of the law concerning a Rule 103(b) motion and her failure to determine when the statutes of limitations expired, we could remand the matter to the circuit court for the trial judge to reconsider appellees' motion to dismiss in light of these omissions. See *Martinez*, 127 Ill. 2d at 122 (reversing a Rule 103(b) dismissal and remanding for a new hearing where the circuit court did not accord "adequate weight to the plaintiff's conduct in effecting service on the defendants following the refiling of his action").

¶ 48    But no one disputes the critical dates at issue in this case. On March 7, 2018, Krueger's feeding tube became dislodged while he resided at Wauconda Care, and he needed the tube to be reinserted inside his stomach. And a staff member at Wauconda Care allegedly reinserted the tube improperly. The day after, Krueger had to be admitted to the hospital due to shortness of breath and lethargy. And on March 10, 2018, he passed away. Generally, the time in which a statute of limitations begins to run is a question of fact. *Jones v. Dettro*, 308 Ill. App. 3d 494, 498 (1999). However, the question may become one of law "if the crucial facts are undisputed and only one

No. 1-20-1357

conclusion can be drawn from the undisputed facts." *Id.* Given that the critical dates in this case are undisputed, no one disagrees that the applicable statutes of limitations began to run on all of plaintiff's claims against appellees somewhere between March 7 and March 10, 2018. And the parties agree that the statutes of limitations for all of these claims were two years, meaning, excluding any tolling that could have occurred in this case, the limitations period expired somewhere between March 7 and March 10, 2020.

¶ 49 With regard to the issue of the statutes of limitations, plaintiff argues that applicable statutes in her case should have been tolled pursuant to section 13-216 of the Code (735 ILCS 5/13-216 (West 2018)) due to Symphony's bankruptcy proceedings. That section of the Code states that, "[w]hen the commencement of an action is stayed by injunction, order of a court, or statutory prohibition, the time of the continuance of the injunction or prohibition is not part of the time limited for the commencement of the action." *Id.* Alternatively, plaintiff argues that the statutes of limitations should have been tolled under *Garbe Iron Works, Inc. v. Priester*, 99 Ill. 2d 84, 87 (1983), where she asserts that the supreme court concluded the amount of time a defendant was subject to a bankruptcy stay extended the time the plaintiff had to file or continue a civil claim. We need not resolve these questions because, as will be discussed, the trial judge's dismissal order was not warranted under the facts of this case even absent any possible tolling of the statutes of limitations.

¶ 50 Turning back to the critical dates in this case, between March 7 and March 10, 2020, which is when the statutes of limitations periods would have expired excluding the alleged tolling, as plaintiff argues. Given the circuit court stay and the bankruptcy court stay, nothing of substance occurred in this case from September 2019 until March 20, 2020, when plaintiff filed her motion in the United States Bankruptcy Court for the Southern District of New York requesting the court

- 22 -

enter an order modifying the automatic stay. As nothing of substance occurred between March 7 and March 10, 2020, it does not matter precisely when the statutes of limitations expired for each of plaintiff's wrongful death and survival claims against appellees during this four-day period, only that they did expire during this period. To this end, the critical time period for purposes of appellees' Rule 103(b) motion to dismiss was after the four day period between March 7 and 10, 2020. Following March 10, 2020, the circuit court litigation still was stayed based on the stay in the bankruptcy court, the context of which is critical to understanding how plaintiff's actions were affected.

¶ 51    Under section 362(a)(1) of the bankruptcy code (11 U.S.C § 362(a)(1) (2018)), a party's voluntary filing of a bankruptcy petition automatically stays "the commencement or continuation, including the issuance or employment of process, of a judicial *** action or proceeding against the debtor that was or could have been commenced" before the debtor filed for bankruptcy. The stay takes effect immediately upon the debtor's bankruptcy petition being filed and is operative regardless of if another party or state court has notice of the bankruptcy filing. *Cohen v. Salata*, 303 Ill. App. 3d 1060, 1064 (1999). Once the automatic stay becomes operative, a state court lacks "jurisdiction to adjudicate claims against the debtor" (*Little Texas, Inc. v. Buchen*, 319 Ill. App. 3d 78, 81 (2001)) and any other entities covered by the stay. *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287-88 (2d Cir. 2003).

¶ 52    By its plain language, the automatic stay protects only the bankruptcy debtor. See 11 U.S.C § 362(a) (2018); *Maritime Electric Co. v. United Jersey Bank*, 959 F.2d 1194, 1206 (3d Cir. 1991) ("Although the scope of the automatic stay is broad, the clear language of section 362(a) indicates that it stays only proceedings *against* a 'debtor'—the term used by the statute itself.") (Emphasis in original.) As such, the automatic stay generally does not protect the debtor's codefendants.

*Performance Food Group Company, LLC v. ARBA Care Center of Bloomington, LLC*, 2017 IL App (3d) 160348, ¶ 26; see also *Queenie*, 321 F.3d at 287 (quoting 3 Collier on Bankruptcy § 362.03[3][d] (15th ed. 2002) ("[A] suit against a codefendant is not automatically stayed by the debtor's bankruptcy filing."); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 998 (4th Cir. 1986) ("[The automatic stay] is generally said to be available only to the debtor, not third party defendants or co-defendants."). The exception to this rule occurs only in "unusual circumstances" (*Sav-A-Trip, Inc. v. Belfort*, 164 F.3d 1137, 1139 (8th Cir. 1999)), such as where a codefendant's "interests are so intimately intertwined with those of the debtor that the latter may be said to be the real party in interest." *Piccinin*, 788 F.2d at 1001. However, because non-bankruptcy courts have concurrent jurisdiction with bankruptcy courts to determine the scope of the automatic stay, the circuit court has the authority "to determine whether an automatic bankruptcy stay applies to certain nondebtor entities in the case before it and whether the [circuit] court shall proceed to judgment in that case." *Performance Food Group*, 2017 IL App (3d) 160348, ¶ 26.

¶ 53    In the instant case, Symphony filed for bankruptcy before plaintiff filed her complaint. After plaintiff served Symphony and the company appeared at the initial case management conference, its counsel informed the trial judge that the company had filed for bankruptcy. In turn, the trial judge stayed the entire lawsuit, not just the proceedings against Symphony, the bankruptcy debtor. As we discussed, although the automatic stay generally protects only the debtor and not any of the debtor's codefendants (see 11 U.S.C § 362(a)(1) (2018); *Performance Food Group*, 2017 IL App (3d) 160348, ¶ 26), the trial judge nevertheless had the authority to stay the proceedings against not just Symphony but all of its codefendants, including appellees, based on the automatic stay from the bankruptcy court. While the affidavit from the associate of plaintiff's counsel summarizing the initial case management conference did not reveal the trial judge's

rationale for staying the entire case, during the hearing on appellees' Rule 103(b) motion to dismiss, she reasoned that she could not expose a defendant in bankruptcy "to any claims by anybody," including codefendants, because they could have crossclaims against the defendant in bankruptcy. Regardless of the trial judge's reasoning, based on *Performance Food Group*, 2017 IL App (3d) 160348, ¶ 26, she had the authority to stay the entire case based on the automatic stay entered in Symphony's bankruptcy proceedings. As such, on July 3, 2019, the entire case was stayed by the trial judge's order. Because of the stay and based on the trial judge's various comments about procedure when a case is stayed, beginning on July 3, 2019, plaintiff could not obtain an order to have a special process server appointed to serve appellees with alias summonses.

¶ 54    This leads us to back to March 10, 2020, the critical date for purposes of appellees' Rule 103(b) motion to dismiss. Ten days after this critical date, plaintiff filed her motion in the United States Bankruptcy Court for the Southern District of New York, requesting the court enter an order modifying the stay, all in an effort to eventually lift the circuit court and obtain an order to have a special process server appointed to serve appellees with alias summonses. Although the case caption on plaintiff's motion was incorrect, which required her to re-file the motion with the correct case caption, within six days of her filing the initial motion, Symphony filed a notice of presentment of a proposed stipulation and agreed order between it and plaintiff to modify the plan injunction and permit plaintiff to continue her proceedings in the circuit court against Symphony to the extent of the available insurance proceeds.

¶ 55    Ultimately, the United States Bankruptcy Court for the Southern District of New York entered the stipulation and agreed order on May 4, 2020. We will not pretend to know the particularities of practice in the United States Bankruptcy Court for the Southern District of New York, but suffice to say, Symphony's bankruptcy case did not just involve itself, but rather Trident,

who was apparently Symphony's holding company, and 21 different affiliates of Trident. It was a complex case with several parties, and likely did not lead to quick resolution of issues. Furthermore, the affidavit from plaintiff's counsel demonstrated that he acted diligently in obtaining relief for plaintiff in the bankruptcy court so that she could proceed with her circuit court litigation. Based on counsel's affidavit and our review of the bankruptcy docket, of which we may take judicial notice (see *LB Steel*, 2018 IL App (1st) 153501, ¶ 21, n. 4), plaintiff did not neglect her case, but rather acted diligently in resolving the bankruptcy court issues, which were a prerequisite to resolving the circuit court service issues. See *Silverberg*, 2015 IL App (1st) 141321, ¶ 43 (observing that, after the plaintiff unsuccessfully attempted to serve the defendant, the "plaintiff did not sit idly by [citation] but instead made numerous attempts to rectify the situation"). As such, any delay in plaintiff attempting to serve appellees while the bankruptcy stay was in effect was attributable to the special circumstances related to Symphony's bankruptcy filing, which caused the trial judge's decision to stay the entire case. See *Kincaid v. Ames Department Stores, Inc.*, 283 Ill. App. 3d 555, 559-60, 563-64 (1996) (special circumstances existed excusing plaintiff's delay in service where the defendant's bankruptcy proceedings automatically stayed the plaintiff's lawsuit); see also *Silverberg*, 2015 IL App (1st) 141321, ¶ 57 (observing that "other activity occurring in a case at the time a plaintiff is attempting to serve a defendant may properly be considered as a special circumstance in a Rule 103(b) analysis").

¶ 56    There are, however, two notable issues that arise from plaintiff's actions in the United States Bankruptcy Court for the Southern District of New York. One is that the stipulation and agreed order between plaintiff and Symphony signed by the bankruptcy court did not even refer to modifying the plan injunction so that plaintiff could pursue her litigation against appellees. Rather, the stipulation and agreed order only permitted plaintiff to pursue her claims against Symphony in

the circuit court to the extent of the available insurance coverage. According to the trial judge during the hearing on appellees' Rule 103(b) motion to dismiss, the proper procedure would have been for plaintiff to request permission from the bankruptcy court to proceed in the circuit court against appellees as the bankruptcy debtor's codefendants.

¶ 57    Despite the trial judge's assertion, it is unclear what mechanism the bankruptcy court could have employed to enter an order pertaining to parties that were completely independent to Symphony and not involved in its bankruptcy proceedings. See, *e.g.*, *In re Exide Technologies*., 544 F.3d 196, 217 (3d Cir. 2008) ("In the context of mass tort or securities cases, involving large numbers of defendants and indemnity relationships, courts routinely find that the remaining claims between non-debtors are non-core or even entirely unrelated to the bankruptcy case."). We cannot fault plaintiff for her failure to modify the plan injunction to allow her circuit court litigation to proceed against appellees. Although plaintiff's actions in the bankruptcy court may not have been accomplished with perfect prudence and in the manner the trial judge believed was proper, there is nothing in the record to indicate that she lacked reasonable diligence in her actions. See *Verploegh v. Gagliano,* 396 Ill. App. 3d 1041, 1046 (the test under Rule 103(b) "is not whether the plaintiff has done everything possible with the utmost prudence and diligence but, rather, whether the plaintiff exercised reasonable diligence").

¶ 58    The second issue is the acknowledged erroneous belief by plaintiff's counsel that the bankruptcy stay had been lifted in the United States Bankruptcy Court for the Southern District of New York when plaintiff filed her emergency motion to lift the circuit court stay and then her motion to appoint the special process server. On April 14, 2020, plaintiff filed her emergency motion to remove the case from the law division's bankruptcy stay calendar under this mistaken belief. Despite this error, after filing the motion, the law clerk to Judge Flannery informed

plaintiff's counsel that the motion did not meet the requirements for an emergency and the case did not need to be removed from the stay calendar to have a special process server appointed. In adherence to these assertions, plaintiff filed the April 17, 2020, motion for an order to appoint a special process server to serve alias summonses on appellees, which Judge Walker granted.

¶ 59 However, the trial judge later found Judge Walker's order void because of the circuit court and bankruptcy court stays. But plaintiff only proceeded in this manner because Judge Flannery's law clerk told her counsel that a motion judge could grant a motion to appoint a special process server even if a case was on the stay calendar. We again cannot fault plaintiff's actions in this manner because her counsel followed a procedure he deemed proper based on assertions from Judge Flannery's law clerk. Regardless of whether a law clerk's statements could be imputed to his or her judge, under the circumstances, plaintiff's counsel could rationally think that the law clerk was speaking for Judge Flannery himself. And thus, these actions by plaintiff through her counsel do not exhibit a lack of reasonable diligence.

¶ 60 The unusual facts of this case are very much special circumstances that affected plaintiff's efforts to serve appellees. But at every step based on the record, plaintiff acted with reasonable diligence in attempting to serve appellees. After the trial judge stayed the entire case, plaintiff through her counsel undertook diligent efforts to lift the bankruptcy stay, only following what she believed the trial judge required. Then again, plaintiff's counsel obtained conflicting information from Judge Flannery's law clerk, which he relied on in filing the motion to appoint a special process server, which Judge Walker granted. Plaintiff followed the instructions of the trial judge and then Judge Flannery's law clerk with reasonable diligence only to have her complaint dismissed against appellees. Although plaintiff's actions may not have been procedurally correct in both the United States Bankruptcy Court for the Southern District of New York and the circuit

court in all respects, she nonetheless exhibited reasonable diligence throughout, which is at the core of a Rule 103(b) analysis. See *Verploegh,* 396 Ill. App. 3d at 1046 (the test under Rule 103(b) "is not whether the plaintiff has done everything possible with the utmost prudence and diligence but, rather, whether the plaintiff exercised reasonable diligence").

¶ 61     There is also an issue as to whether any of the appellees were actually served properly by plaintiff, which is relevant to a Rule 103(b) analysis. See *Case*, 227 Ill. 2d at 213. This is, in part, because the trial judge found Judge Walker's order appointing a special process server was void. Plaintiff initially effectuated service on Lancaster and Wauconda Care using a special process server, who served Zung's wife in Burlingame, California. Additionally, plaintiff served Yniego using a special process server, who served Yniego's husband at their residence in Round Lake. All three effectuations of service were based on Judge Walker's order appointing the special process server. Assuming *arguendo* that these services on appellees were invalid based upon a void order entered by Judge Walker, we cannot fault plaintiff. That potential error was largely due to plaintiff's reliance on the assertion by Judge Flannery's law clerk, which we have already asserted did not demonstrate a lack of reasonable diligence by plaintiff.

¶ 62     And even if Judge Walker's order was void, plaintiff had no reason to know there was an issue with her service on appellees using the special process server until the trial judge ruled that order was void during the hearing on appellees' Rule 103(b) motion to dismiss. In other words, appellees were served by plaintiff's special process server on May 7 and May 8, 2020, and thus, plaintiff had no reason to attempt any further service on appellees with special process servers from May 8, 2020, until November 16, 2020, when the trial judge held the hearing on appellees' Rule 103(b) motion to dismiss. And thus, plaintiff's lack of service actions during this time period does not indicate a lack of reasonable diligence on her part. Moreover, even if the service on

appellees was invalid, they still acquired actual knowledge of the lawsuits by early May 2020, which would be only two months after the applicable statutes of limitations expired absent any potential tolling. See *Case*, 227 Ill. 2d at 213 (observing that one factor to consider in ruling on a Rule 103(b) motion to dismiss is the "actual knowledge on the part of the defendant of pendency of the action as a result of ineffective service").

¶ 63    In sum, the unusual circumstances of this case forced plaintiff to take a circuitous path in attempting to serve appellees. While plaintiff might have had these missteps along the way, there is nothing in the record to show that these inadvertent mistakes denied appellees a fair opportunity to investigate the facts of their alleged liability. See *Silverberg*, 2015 IL App (1st) 141321, ¶ 31 (observing that Illinois courts are cautious not to harshly apply Rule 103(b) and dismiss a cause with prejudice when the delay in service is attributed minor or inadvertent errors); *Verploegh*, 396 Ill. App. 3d at 1046 (observing that the test under Rule 103(b) is "whether the plaintiff exercised reasonable diligence so that the delay of service did not deny the defendant a fair opportunity to investigate the facts of the case"). Given the totality of the circumstances, the trial judge abused her discretion when she granted appellees' motion to dismiss with prejudice.

¶ 64    Nevertheless, appellees cite various decisions in which this court upheld a dismissal based on Rule 103(b) where the time period from the complaint being filed to service being effectuated was far less than occurred in this case. See *Kramer v. Ruiz*, 2021 IL App (5th) 200026, ¶ 25 (eight-month delay sufficient to affirm dismissal with prejudice under Rule 103(b)); *Wilder Chiropractic, Inc. v. State Farm Fire & Casualty Co.*, 2014 IL App (2d) 130781, ¶¶ 81, 84 (four-month delay sufficient to affirm dismissal without prejudice under Rule 103(b)); *Emrikson v. Morfin*, 2012 IL App (1st) 111687, ¶¶ 18, 27 (seven-month delay sufficient to affirm dismissal with prejudice under Rule 103(b)); *Long v. Elborno*, 376 Ill. App. 3d 970, 979-80 (2007) (seven-month delay sufficient to affirm

dismissal with prejudice under Rule 103(b)). However, these cases are all vastly different than the instant case, as none of them involved the unusual special circumstances of the bankruptcy and circuit court stays, which prevented plaintiff from effectuating service of process for a significant period of time. Additionally, *Wilder Chiropractic*, 2014 IL App (2d) 130781, ¶¶ 81, 84, involved a case being dismissed without prejudice. And in *Kramer*, 2021 IL App (5th) 200026, ¶ 3, *Emrikson*, 2012 IL App (1st) 111687, ¶ 3 and *Long*, 376 Ill. App. 3d at 979, the plaintiffs all filed their lawsuits less than four days before the statutes of limitations expired, which is drastically different from this case, where plaintiff filed her complaint several months before the expiration of the applicable statutes of limitations. Consequently, we find appellees' reliance on these cases unpersuasive, and we reverse the trial judge's order granting appellees' motion to dismiss with prejudice and remand the cause for further proceedings consistent with this order.

¶ 65                                    III. CONCLUSION

¶ 66     For the foregoing reasons, we reverse the circuit court's order granting appellees' motion to dismiss with prejudice and remand the cause for further proceedings consistent with this order.

¶ 67     Reversed and remanded.